THE STATE OF KANSAS v. LEWIS CRAWFORD.

1. JURORS; *Opinions and Qualifications.* Impressions not amounting to opinions, received from newspaper articles or rumor, do not disqualify a juror, and are not cause for challenge. [*The State v. Medlicott,* 9 Kas., 257, cited and followed.]

2. INSANITY, *as a Defense; Burden of Proof.* In a criminal action, where the defense of insanity is set up, it does not devolve upon the defendant to prove that he is insane by a preponderance of the evidence; but if upon the whole of the evidence introduced on the trial, together with all the legal presumptions applicable to the case, under the evidence, there should be a reasonable doubt as to whether the defendant is sane or insane, he must be acquitted.

3. REPEAL OF STATUTES; *Effect on Criminal Action.* When a statute is repealed, and the repealing statute is silent as to whether the rights and remedies which have accrued under the repealed statute shall be abrogated or not, section 1 of the "act concerning the construction of statutes," (Gen. Stat., 998,) will have the force and effect to save and preserve all accrued rights and remedies, whether they belong to the state or to individuals, and in criminal as well as in civil cases. [*The State v. Boyle,* 10 Kas., 113, cited and followed.]

*Appeal from Marion District Court.*

A COMPLAINT was filed and prosecution commenced against *Crawford* on the 20th of February 1872, charging him with the crime of murder in the first degree, in shooting and killing Charles H. Davenport on the 14th of said February. Subsequently, and at the April Term of the district court, an information was duly filed to which defendant pleaded "Not guilty," and the case was tried at the September Term 1872 of said court. The record shows that E. W. Finn was called into the box, as a juror, and upon being examined as to his qualifications, testified:

"I heard of the matter last spring. What I heard did not make any impression on my mind. Have formed and expressed no opinion. What I heard was hearsay, and I have never read any account in papers, and the person who told me evinced no feeling. I could go into the trial without any prejudice either way. From what I heard I suppose the defendant here present is the man who killed Davenport.

It would take evidence to remove the impression from my mind that Crawford killed Davenport."

The defendant challenged said juror for cause, which challenge was overruled by the court, and Finn was one of the jurors who tried the case. Other persons were in like manner examined — one testifying "that he thought Crawford killed Davenport, and such impression was obtained from reading the newspapers;" another testified that "he had read about the affair in the papers — thought Davenport was killed by Crawford"— but both stated that they "had formed no opinion as to the guilt or innocence of the accused," etc. These persons were also challenged for cause, and the challenges overruled. Defendant then challenged them peremptorily, and he exhausted his peremptory challenges, leaving Finn on the jury. The state having presented its evidence, and rested, defendant *Crawford* called several witnesses whose testimony tended to show that at the time of committing said supposed offense he was insane. Among other instructions the court gave the following, to which defendant excepted:

"In order to convict the defendant of any crime under this information you must be satisfied from the evidence beyond a reasonable doubt, first, that Charles H. Davenport is dead; second, that he came to his death at the hands of the defendant previous to the commencement of the prosecution; third, that the defendant killed him by shooting him with some firearm loaded with powder and ball; fourth, that this occurred in the county of Marion, and state of Kansas.

"If you are satisfied of these facts beyond a reasonable doubt, the defendant is guilty of some degree of felonious homicide included in the crime charged, unless the evidence further satisfies you that the homicide is either justifiable or excusable, or that Crawford was at the time of its commission insane, and hence incapable of committing a criminal act. * * * When a homicide is proved, there is no presumption that it is either justifiable or excusable; hence these defenses must be shown by the evidence, and unless so shown the jury must find it criminal.

"The same is true in reference to insanity. Every man is presumed to be sane; hence the evidence must show insanity

or a jury is bound to find sanity. A jury however need not be satisfied beyond a reasonable doubt that a homicide is justifiable, or excusable, in order so to find. If on the whole evidence there seems to be greater reason to believe that a homicide is justifiable or excusable, than that it is criminal, they must so find; and if on the whole evidence there seems greater reason to believe that a man is insane, than that he is sane, a jury should so find."

The defendant asked the court to give four special instructions, as follows:

"1. If the jury believe from the evidence that the defendant took the life of Charles H. Davenport at the time and place mentioned in the information, or at any other time preceding the commencement of this action, and if from the evidence you entertain a reasonable doubt of his being at the time so sane as to know the consequences of his act, and that it was wrong, it will be your duty to find the defendant not guilty.

"2. If the jury believe from the evidence that there is such a disease as *dipsomania*, and that persons having that disease cannot resist the use of intoxicating liquors, and that the defendant had that disease and had become so drunk on intoxicating liquors as to be unconscious of what he was doing, and while in that condition took the life of Charles H. Davenport, you should find him not guilty." [Which said second instruction the court gave with the following modification: "But I charge you, that the fact that there is such a disease, and that defendant was laboring under it to such a degree, and that he became drunk in consequence of it, and was unconscious by reason of such drunkeness, are all matters which must be shown by the evidence, and are not to be presumed or supposed to exist, unless shown by the evidence to exist."]

"3. Sanity is a necessary ingredient of guilt, without which there can be no intelligent commission of crime, and consequently no criminal responsibility.

"4. When there is evidence tending to show insanity of the defendant at the time of the commission of the offense, it is incumbent on the prosecution to satisfy the jury beyond a reasonable doubt of the sanity of the defendant at that time."

The court refused to give these instructions, or any of them, except the second, and gave that only in connection

·with the additional matter above shown.  The jury returned
a verdict of "guilty of murder in the first degree as charged
in the information."  New trial refused.  A motion in arrest
of judgment was made, upon the ground that since the al-
leged offense was committed the law in force at that time
prescribing the punishment had been repealed, and the new
and greater punishment prescribed by ch. 166, laws of 1872,
(p. 336,) could not be applied.  The district court overruled
the motion, and defendant was sentenced to be executed on
the 22d of November 1872, and from such judgment and
ᵥsentence defendant appeals to this court.

*Frank Doster*, and *Case & Putnam*, for appellant:

1. There was error in impanneling the jury.  The chal-
lenge of Finn for cause should have been sustained.  The
defendant exhausted his peremptory challenges, but Finn
remained on the jury and tried said cause.  Finn was incom-
petent.  Criminal code, § 205;  3 Greenl. Ev., § 30.  That
Crawford killed Davenport was to him an assured fact.  It
is immaterial in what manner the juror became biased.  The
question is, is he impartial or not?  4 Wend, 229;  1 New
Hampshire, 491.

2. The court erred in its instructions given, and in those
refused, as to justifiable and excusable homicide.  The court
goes upon the hypothesis that if the testimony be *equal* in
regard to justifiable and excusable homicide, the jury should
find the defendant guilty;  that is, that whether the act be
justifiable or excusable, is matter of defense, not to be proved
beyond a reasonable doubt, but by the greater evidence;  and
unless there is a preponderating amount of evidence in favor
of those propositions, the jury are authorized to convict.
The instructions taken as a whole, amount to this:  "If you
are satisfied, beyond a reasonable doubt, that the defendant
killed Davenport, with a deadly weapon, in Marion county,
before the commencement of the prosecution, he is guilty of
murder or manslaughter, unless the defendant has proven to
your satisfaction, by the preponderance of evidence, that the

killing was justifiable or excusable." This is a remarkable instruction. The defendant is presumed to be innocent; this presumption goes with him through all the stages of the trial. He is entitled to the benefit of every reasonable doubt, which continues his legal right until the end of the case. The burden of proof is on the state throughout; and in all cases, before a conviction can be had, the jury must be satisfied, *upon all the evidence,* beyond a reasonable doubt, of the affirmative of the issue presented by the state, to-wit, that the defendant is guilty in manner and form, as charged in the information. *Com. v. McKee,* 1 Gray, 61, 65; 24 Pick., 366; 26 Me., 312; *State v. Horne,* 1 Kas., 72.

The presumption from the killing with a deadly weapon is a disputable presumption. The evidence need not preponderate in favor of the defendant. If the jury had a reasonable doubt, *on the whole evidence,* as to whether it was justifiable or excusable homicide, they must acquit the defendant. "Under the statute, in a trial for murder, the killing having been admitted by the accused, it does not devolve on him to prove that the killing was justifiable." *Goodall v. State,* 1 Oregon, 333. The instructions above referred to, if erroneous, were not cured by subsequent correct charges. *Horne v. State,* 1 Kas., 73, 74.

3. As to insanity as a defense. The district court instructed the jury that the law presumes a man sane, and that insanity is a question to be made out by the defendant by the greater evidence, and also, that the defendant is not entitled to the benefit of a reasonable doubt as to whether he is sane or insane. It would seem to be the true rule in criminal cases, though there are some decisions to the contrary, that the burden of proof never shifts, but that it is upon the state throughout; and that *in all cases,* before a conviction can be had, the jury must be satisfied, upon *all* the evidence, beyond a reasonable doubt, of the affirmative of the issue presented by the state. *Com. v. Rogers,* 7 Metc., (Mass.,) 501; 1 Gray, 61, 65; 1 Greenl. Ev., § 81, and notes; 31 Ind., 485; 40 Ill., 352; 16 N. Y., 58; 28 Ala., 693; 1 Bish. Cr. Prac., § 534.

We think the instructions in regard to moral insanity were too harsh, and not the law of the case. The court instructed the jury that, "although a man may be laboring under partial insanity, if he still understands the nature and character of his act and its consequences; if he has a knowledge that it is wrong and criminal, and a mental power sufficient to apply that knowledge to his own case, and to know that if he does the act he will do wrong and receive punishment, such partial insanity is not sufficient to exempt him from responsibility for criminal acts." The correct rule is stated by Judge Miller in *Terry v. Insurance Co.*, 1 Dillon's Ct. Ct. Rep., 405. See also, *State v. Stevens*, 31 Ind., 485; *People v. Kleim*, 1 Edm., (N. Y. Sel. Cas.,) 13; 1 Duvall, (Ky.,) 224. Wharton & Stille's Medical Jurisprudence, § 61, states the law as follows: "Moral insanity is a defense to an indictment, when, 1st, It is connected with and depends on a cognate mental derangement, which may be either substantially proved, or implied from the intensity of the moral disorder. 2d, It is accompanied by such an exaggerated and morbid view of the particular act as to make the party incapable of a healthy judgment of right and wrong in reference to that act. *It is not necessary that the party should be ignorant that the particular act was wrong.* He may know this, and yet his judgment may be so perverted by morbid counter-considerations as to prevent him from forming an accurate moral judgment on the premises. 3d, It involves an impulse which for the time destroys free agency."

4. The motion in arrest of judgment should have been allowed. By the act of 1872, the punishment for murder in the first degree was changed to imprisonment in the penitentiary at hard labor for one year, and at the expiration of that time hanging, in the discretion of the governor. (Laws 1872, p. 336.) This act is *retrospective* as well as *prospective* in its operation, and applies to the case of persons charged with having committed murder in the first degree who had not been convicted prior to its taking effect, as well as to persons who might thereafter be so charged and convicted. Its lan-

The State v. Crawford.

guage is, "whenever any person shall be sentenced to the punishment of death," etc., the proceedings therein directed shall be had. Statutes containing similar language have been construed to be retrospective in their operation: 22 N. Y., 95, 155; 25 N. Y., 406; 26 N. Y., 167. The act of 1872, as applied to the case at bar, (the alleged crime having been committed prior to its enactment,) is *ex post facto*, unconstitutional and void, being within the federal prohibition. It not only prescribes a *different* punishment, but it prescribes a *greater* punishment than had previously been inflicted, and the old law being repealed, the prisoner must be discharged. 29 N. Y., 125; 2 Overton, (Tenn.,) 768; 5 Cold., (Tenn.,) 1. The first subdivision of § 1, ch. 104, Gen. Stat., 998, and the decisions thereunder of *Gilleland v. Schuyler*, 9 Kas., 569, and *The State v. Boyle*, 10 Kas., 113, have no application to this case. In those two cases the repeal was absolute and contained no saving clause; hence the above provision of the General Statutes necessarily intervened; but in the case of the act of 1872 the general statutory provision is divested of any controlling effect by making the later law retrospective in its operation, and repealing "all other acts inconsistent therewith." In New York when the above-cited decisions were made their statutory provision on the effect of repeals was identical in substance with that of our ch. 104 of the Gen. Stat., and those decisions were of course made with reference to it.

5. The court erred in sentencing the defendant, under the old law, to be hanged on the 22d day of November, 1872. The law of 1872, page 336, applies to the defendant and his sentence. 4 Ala., 173; 9 Barb., 161; 2 Texas, 363; 11 Gray, 438.

*Martin, Burns & Case*, for the State:

1. There was no error in overruling the challenges for cause, and in impanneling the jury. This question has been settled by this court.

2. Did the court err in the instructions given to the jury?

The question of insanity, as a defense, is a comparatively new one in this state. That it is an important question, all admit; and the very highest considerations demand that the whole matter be carefully considered, and fully and fairly decided. The points that are particularly important in this case are: 1st, What degree of mental unsoundness will excuse from crime? 2d, Must the state satisfy the jury beyond a reasonable doubt, of the defendant's sanity? On the first point, the district court laid down the rule very clearly and very correctly, as follows:

"A man is not to be excused from responsibility if he has capacity and reason sufficient to enable him to distinguish between right and wrong as to the particular act he is then doing—a knowledge and consciousness that the act he is doing is wrong and criminal and will subject him to punishment. In order to be responsible, he must have sufficient power of memory to know the relation in which he stands to others, and others stand to him; that the act he is doing is contrary to the plain dictates of justice and right, injurious to others, and a violation of the dictates of duty. On the contrary, although he may be laboring under partial insanity, if he still understands the nature and character of his act and its consequences, if he has a knowledge that it is wrong and criminal, and a mental power sufficient to apply that knowledge to his own case, and to know that if he does the act he will do wrong and receive punishment, such partial insanity is not sufficient to exempt him from responsibility for criminal acts. If then, it is proved to the satisfaction of the jury *by the greater weight of testimony*, that the mind of the accused was in a diseased and unsound state, the question will be, whether the disease at the time existed to so high a degree that for the time being it overwhelmed the reason, conscience and judgment, and whether the person in committing the homicide acted from an irresistible and uncontrollable impulse. If so, then the act was not the act of a voluntary agent, but the involuntary act of the body without the concurrence of a mind directing it."

This charge is certainly as favorable to the defendant as he could ask; and the doctrine here laid down by the court is thoroughly supported by the following authorities: *Willis v. The People*, 32 N. Y., 715; *Loeffner v. The State*, 10 Ohio

St., 598; *The State v. Huting*, 21 Mo., 464; *Com. v. Mosler*, 4 Penn. St., 264; *Hopps v. The People*, 31 Ill., 385; *U. S. v. Schults*, 6 McLean C. C., 121.

2. Is it the duty of the state to prove sanity, beyond a reasonable doubt? The charge of the court on this point is more favorable than the defendant had a right to demand. The law on that point is fully stated by the court, and if any error was committed, it is in the defendant's favor. On that point the court charged the jury as follows:

"When a homicide is proved, there is no presumption that it is either justifiable or excusable. Hence, these defenses must be shown by the evidence; and unless so shown, the jury must find it criminal. The same is true in reference to insanity; every man is presumed to be sane, and hence the evidence must show insanity, or a jury is bound to find sanity. A jury however need not be satisfied *beyond a reasonable doubt* that a homicide is justifiable or excusable, in order so to find. If, on the whole evidence, there seems to be greater reason to believe that a homicide is justifiable or excusable than that it is criminal, they must so find; and if, on the whole evidence, there seems greater reason to believe that a man is insane than that he is sane, a jury should so find."

The following authorities fully support the charge of the court on this point. Many of them declare the law to be strongly against the defendant's theory, as well as the charge of the court: *The State v. Reddick*, 7 Kas., 143, 153; 21 Mo., 464; 32 N. Y., 147; 42 N. Y., 1; 43 N. H., 224; 10 Ohio St., 598; 7 Gray, 583; 30 Miss., 600; 16 B. Monroe, 587; 32 Iowa, 49; 23 Ill., 283; 43 Mo., 127; 1 Bishop's Crim. Proc., § 534.

3. The court properly refused to give the jury special instructions, numbered 1, 3 and 4, as requested by the defendant. The court had fully and fairly instructed the jury on the points covered by these instructions, and was not bound to repeat them. 7 Kas., 156. Besides this, said 4th instruction is not law. The court might well have refused the 2d absolutely, for the reason that not a word of evidence is preserved in the record, and so far as this court is informed there was no evidence in relation to drunkenness or dipso-

mania; and to authorize the giving of an instruction, there must be evidence to base it upon. *State v. Ross,* 29 Mo., 32. The qualification made by the court was correct, and necessary in order to fairly present the law of the case, and must be taken in connection with that portion of the general charge relating to drunkenness.

In support of that part of the charge of the court relating to intoxication, we call the attention of the court to the following authorities: Elwell on Malpractice, 413; 1 Am. Cr. Law, (5th ed.,) §§ 35 to 41, and notes; 1 Bish. Cr. Law, § 494; 1 Parker's Cr. Rep., 649; 5 Mason, 28.

4. The next question is, as to the effect of the act of March 2, 1872, on criminal prosecutions then pending. Defendant Crawford was arrested and committed to answer the offense now charged against him, on the 20th of February. This prosecution dates from that day, and this case is in nowise affected by said act of March 2d. In support of this proposition, we call the attention of the court to the case of *The State v. Boyle,* 10 Kas., 113. The act was committed, and the prosecution commenced, *before* the repeal of §§ 258 to 262, of the criminal code. The first subdivision of § 1, ch. 104, Gen. Stat., 998, clearly preserves the rights of the state as to prosecutions pending at the date of the repeal of a criminal statute. (29 N. Y., 124; 32 N. Y., 230.) Section 8, of our crimes act fixes the punishment of death for the crime of murder in the first degree. (Gen. Stat., 319.) This section was not repealed by the act of March 2, 1872. It has always been, and now is in full force. Sections 258 and 259 of our criminal code provided the mode of executing the judgment of the court in capital cases. (Gen. Stat., 861.) These two sections were repealed by the act of March 2, 1872, and a new mode of executing the judgment of the court is provided; (Laws of 1872, p. 336, §§ 1, 2, 3, 4, 6;) but such change does not affect the rights of the state, nor the liability of the defendant.

4—11 KAS.

The opinion of the court was delivered by

VALENTINE, J.: This was a criminal action in which the defendant was prosecuted for murder in the first degree, found guilty thereof, and sentenced to be executed. Three principal questions are raised in the case: First, was the jury legally impanneled? Second, was the charge of the court with reference to insanity, correct? Third, was the sentence correct?

I. The first question was settled in the case of *The State v. Medlicott*, 9 Kas., 257. The question as presented in that 1. Jurors—opinions, etc. case made a much stronger case for the defendant than. it does as presented in this case; and as the opinions of the judges of this court with regard to said question have not changed, it is necessary for us now only to refer to that case.

II. Did the court charge the jury correctly with regard to the question of insanity? The court in substance charged, 2. Insanity as a defense. Burden of proof. that it devolved upon the defendant to. prove that he was insane, and that he must do so by a preponderance of the evidence in order to be acquitted. This we think is not the law. We suppose it will be conceded that no crimes can be committed by an insane person; or at least it will be conceded, that no act which is the result of insanity, total or partial, the result of an insane delusion, or the result of an insane uncontrollable impulse, can be denominated a crime. Murder at common law is defined to be " When a person of *sound memory and discretion* unlawfully killeth any reasonable creature in being, and under the king's peace, with malice prepense or aforethought, either express or implied." (4 Blackstone Com., 195; 2 Chitty Cr. Law, 724; 3 Coke Inst., 47.) And our statutes have nowhere attempted to change the common-law definition of murder. But they have simply taken murder as defined at common law, and divided it into two or· probably three degrees. (Crimes act, Gen. Stat., 319, 320, §§ 6, 7, 12.) The fact then of soundness of mind is as much an essential ingredient

of the crime of murder, as the fact of killing, or malice, or any other fact or ingredient of murder, and should, it would seem, be made out in the same way, by the same party, and by evidence of the same kind and degree, and as conclusive in its character, as is required in making out any other essential fact, ingredient, or element of murder. In every criminal action in this state, "A defendant is presumed to be innocent until the contrary is proved. When there is a reasonable doubt whether his guilt is satisfactorily shown, he must be acquitted. When there is a reasonable doubt in which of two or more degrees of an offense he is guilty, he may be convicted of the lowest degree only." This is the statute law of Kansas, (Gen. Stat., 856, crim. code, § 228,) and we suppose will therefore not be controverted. This statute in substance is, that every defendant is presumed to be innocent of all crime until his guilt is legally shown; that it devolves upon the state to show his guilt; that his guilt must be shown by evidence that will convince the jury beyond a reasonable doubt; and if, upon the whole of the evidence submitted to the jury, there should be a reasonable doubt as to whether his guilt is satisfactorily shown, he must be acquitted. Now, as no insane person can commit a crime it necessarily follows that if the jury have a reasonable doubt of the defendant's sanity, they must also have a reasonable doubt of his guilt. To doubt his sanity is to doubt his guilt; and to doubt his guilt, (if the doubt be a reasonable one,) is to acquit. The doubt of guilt cannot be of a less degree than the doubt of sanity; and if the doubt of sanity be a reasonable doubt, the doubt of guilt must also and necessarily be a reasonable doubt.

It has been said that this reasonable doubt goes only to the *corpus delicti*, the body of the offense. We scarcely know in what sense the words *corpus delicti*, are here intended to be used. But in whatever sense they may be intended to be used, the proposition is probably erroneous. If it be said that the offense itself, with all its essential ingredients, (and this, in fact, is what constitutes the body of the offense, the *corpus delicti*,) must be proved beyond a reasonable doubt, but that

the defendant's connection therewith, and his capacity to commit the same may be proved by a less degree of evidence, then the proposition is glaringly erroneous. For if the supposed offense be committed by the defendant alone, then, unless he has capacity to commit an offense, no offense is in fact committed. And if it devolves upon the defendant to prove his want of capacity (where possibly a vast amount of evidence is introduced by both parties, and on each side of the question,) by an equilibrium of the evidence, by less than a preponderance of the evidence, then it follows as a logical necessity that the offense itself may be proved by less than a preponderance of the evidence. With capacity in the perpetrator, a crime is committed. Without capacity, no crime is committed. The capacity is proved by less than a preponderance of the evidence; therefore the crime itself is proved by less than a preponderance of the evidence. The plea of insanity is not in any sense like the plea of confession and avoidance. The defendant does not say by his plea of insanity, "It is true, I have committed murder as charged in the indictment, but I was insane at the time and therefore should not be punished therefor"—for if he committed *murder* he could not have been *insane;* and if he was insane he could not have committed murder. The two things are wholly inconsistent with each other. But the defendant does say by the plea, "I am not guilty of murder at all, nor of any other offense, because I was insane at the time the supposed offense was committed, and was therefore incapable of committing any offense." Neither is the plea of insanity an affirmative plea on the part of the defendant. It is merely a part of the negative plea of "not guilty." All evidence of insanity is given under this negative plea of "not guilty," and it is given merely in the rebuttal of the *prima facie* case that the state must make out of guilt and sanity. The defendant is never required to prove that he is not guilty by proving that he is insane; but the state must always prove that the defendant is guilty by proving that he is sane. It is true that the state is not required in the first instance to introduce evidence to prove sanity, for

the law presumes that all persons are sane, and this presumption of sanity takes the place of evidence in the first instance. It answers for evidence of sanity on the part of the state. But if evidence is introduced which tends to shake this presumption, the jury must then consider the same, and its effect upon the main issue of guilty or not guilty, and if upon considering the whole of the evidence introduced on the trial, together with the presumption of sanity, the presumption of innocence, and all other legal presumptions applicable to the case under the evidence, there should be a reasonable doubt as to whether the defendant is sane or insane, he must be acquitted. It is also true that when it is shown on the trial of a case, that the defendant has committed an act which would be criminal if he were sane, and no evidence of insanity has been introduced, a *prima facie* case of crime and guilt has been made out by the state against the defendant. But the law does not in such a case, nor in any case require that the *prima facie* proof of crime and guilt made out by the state shall prevail unless it shall be overcome by a preponderance of the evidence. The state nearly always makes out a *prima facie* case of crime and guilt before it closes its evidence in chief and rests its case. But the defendant is never then bound to rebut this *prima facie* case by a preponderance of the evidence. He is required only to raise a reasonable doubt as to his guilt. The burden of proof is always upon the state, and never shifts from the state to the defendant. The making out a *prima facie* case against the defendant does not shift the burden of proof. With the view that we have taken of this question, considering it to be governed principally by our own statutes, it makes but little difference what the common law was upon the subject, or what sundry courts have supposed it to be; but we would refer however to the following decisions of courts as sustaining the view we have taken: *State v. Bartlett*, 43 N. H., 224, 228; *Hopps v. People*, 31 Ill., 385, 393; *Chase v. People*, 40 Ill., 224, 228; *Polk v. State*, 19 Ind., 170; *Stevens v. State*, 31 Ind., 485; *People v. Garbutt*, 17 Mich., 9, 21; *People v. McCawe*, 16 N. Y., 58,

64; *Smith v. Commonwealth,* 1 Duvall, (Ky.,) 224, 228. And in this connection see *Ogletree v. State,* 28 Ala., 693; 1 Bish. Cr. Procedure, § 534. With regard to the common law, we suppose it will be conceded that it was a rule of the common law that it devolved upon the state to prove the guilt of a defendant in a criminal action beyond a reasonable doubt. We will also suppose, for the sake of the argument, that said rule had some exceptions, and that proof of insanity was one of them. If so, then our statutes have re-enacted the rule of the common law without the exception, and by so doing the statutes have unquestionably made the rule general, and abolished the exceptions.

III. Was the sentence correct? The prosecution was commenced under the laws of 1868, while such laws were in full force, and the sentence was pronounced in accordance with said laws, (Crim. Code, §§ 258, 259, Gen. Stat., 861,) and not in accordance with the laws of 1872, page 336, ch. 166, §§ 1, 2, 3, 4, although the sentence was not pronounced until after the passage of the law of 1872. We perceive no error in this. We know of nothing that will take this case out of the decision made in the case of *The State v. Boyle,* 10 Kas., 113. There is nothing in the act of 1872 that expressly shows that it was intended that such act should have a retrospective operation, or that it should apply to proceedings commenced prior to its passage. And if, by giving the act a retrospective operation it would render the act *"ex post facto,* unconstitutional, and void," as is claimed by the defendant's counsel, we should hardly presume, in the absence of express provisions so declaring, that the legislature intended that the act should have such an operation. (*Shepherd v. People,* 25 N. Y., 410.) It is not necessary for us to examine the other questions discussed by counsel.

The judgment of the court below must be reversed, and cause remanded for a new trial and for further proceedings.

BREWER, J., concurring.

*3. Repeal of statutes; effect on cases pending.*