*In the Matter of the Petition of* GEORGE W. PETTY *for a Writ of Habeas Corpus.*

1. PROVISIONS OF CH. 166, LAWS OF 1872, *if Retrospective, are Void.* The provisions of chapter 166, Laws of 1872, if intended to apply to offenses committed prior to the adoption of that act, and to operate retrospectively, are unconstitutional and void, as coming within the condemnation of the national constitution, prohibiting the passage of any *ex post facto* law.

2. ———— The case of *State v. Crawford,* 11 Kas. 32, followed.

3. PETITION FOR HABEAS CORPUS, *No Relief under, When.* Where the court has jurisdiction of the person of the prisoner, and of the offense with which he is charged, and the verdict is valid, and the judgment pronounced is not void, but merely irregular, *held,* such prisoner cannot be relieved under a petition for *habeas corpus.*

*Original Proceedings in Habeas Corpus.*

ON the 13th day of May, 1870, a true bill of indictment was returned into the district court of Greenwood county by the grand jurors thereof, against *Geo. W. Petty,* for the willful, deliberate and premeditated killing of one Robert Clark, on the 27th day of May, 1866. *Petty* was arrested in 1878, and first tried upon the indictment at the May Term, 1878, of said district court. At such term he was convicted of murder in the first degree. On appeal, the judgment was reversed for errors occurring on the trial. (*State v. Petty,* 21 Kas. 54.)

He was again tried at the May Term, 1879, of the court, and the jury again found him guilty of murder in the first

degree. On the 28th day of May, 1879, he was sentenced under and pursuant to the laws of 1872. (Ch. 166, p. 336.)

On the 11th day of June, 1879, a writ of *habeas corpus* was sued out of this court in his behalf. The application for the writ was based upon the ground that, so far as the petitioner's case is concerned, the law of 1872 regulating the infliction of the death penalty is *ex post facto*, unconstitutional, and void; and that the district court had no jurisdiction to pronounce sentence. The argument of counsel is, that the law of 1872 makes the offense of murder in the first degree punishable in a manner in which it was not punishable in 1866, and increases the punishment with which it was punishable prior to the passage of that act, and that by such act all prior laws relating to the punishment of death were repealed. Prior to the adoption of the law of 1872, whenever any convict was sentenced to the punishment of death, the court appointed a day on which such sentence was to be executed, the day not being less than four nor more than eight weeks from the time of the sentence.

By the act of 1872, a person sentenced to death is to be delivered to the warden of the penitentiary, under a warrant of the court pronouncing judgment, and kept at hard labor within the walls of the penitentiary until the warden receives the order of the governor fixing the day on which the sentence of the law is to be carried into effect. Section 3 further provides:

"The governor shall keep in his office a record of all warrants of conviction and sentence received by him, and any governor of the state for the time being shall, in his discretion, at any time not less than one year from the time of conviction of each convict respectively, make an order fixing the day on which the sentence of the law shall be carried into effect, which time shall be at least thirty days from the issuance of such order, which order shall be directed to the warden of the penitentiary, to be by him executed."

*J. N. Lewis*, and *Clogston & Martin*, for petitioner. (No brief on file.)

*George C. Rogers,* county attorney, *Willard Davis,* attorney general, *W. A. Johnson,* and *H. B. Johnson,* for The State:

1. The question of the validity of the judgment cannot be raised by *habeas corpus.* The petitioner is held upon process issued on a final judgment of a court of competent jurisdiction, and upon a commitment issued by a district court of competent jurisdiction, upon an indictment. (Criminal Code, § 271.) It has been held (60 N. Y. 559; 18 Wall. 163; 3 Otto, 18; 49 Mo. 291) that if the judgment is one which the court, under no circumstances, would have power or jurisdiction to render, it will be utterly void, and restraint under it will be declared, upon *habeas corpus,* to be illegal. It is not necessary in this case to controvert that principle of law, for this case does not fall within it. It is not claimed but that in certain cases — in all cases of murder perpetrated since the act of 1872 — the judgment rendered would be valid, but only that under the facts and circumstances of this particular case, this judgment, if any, should not have been given. This court is asked to correct a supposed error of the trial court in holding that this case belongs to the class of cases in which the judgment rendered is the proper and only one directed by the law. It is very clear that this is a ruling which can only be reversed upon appeal. (*Ex parte Phillips,* 7 Kas. 48; *Ex parte Nye,* 8 Kas. 99.)

2. It is claimed by the prisoner that his offense was committed under the law of 1868, which prescribed the penalty of death (ch. 31, § 8), which penalty should be inflicted at a time not less than four nor more than eight weeks from the time of sentence (ch. 82, § 258), by hanging by the neck (id., § 259) in some private inclosure near the jail, and in presence of certain persons (id., § 261); that he was sentenced under the act entitled "An act to regulate the infliction of the death penalty," approved March 2, 1872 (Laws 1872, ch. 166), and that this latter act so changes the punishment for his offense as to render the same, as to him, *ex post facto* and unconstitutional. (Const. U. S., art. 1, § 10.) Under the act of 1872,

the prisoner, instead of being hung within between four and eight weeks from sentence, in the proper jail, was sentenced to be taken to the penitentiary, to be hung at any time after the expiration of one year, such time to be fixed by the governor, (id., §§ 1, 2 and 3.) In the meantime he must be kept at hard labor, (id., § 4.) It is discretionary with the governor whether he ever orders the prisoner to be executed (id., § 3), and if he does not, the practical effect of the act of 1872 is to change the punishment from that of *death* to *imprisonment for life.* But the time when the execution could be ordered has not arrived, and there is no showing made as to the intention of the governor in this regard. Is this act, as to this petitioner, unconstitutional? In discussing this branch of the case, we will state the question in its very broadest and most unfavorable aspect, viz.: Is a law which changes the punishment for a crime already committed, from hanging by the neck until death ensues, to imprisonment for life, an *ex post facto* law? We shall assume it to be within the common knowledge of the court, that the effect of the act of 1872 is to mollify, and not to aggravate the rigor of the former law. We are aware that there has been some speculation by some courts, as in the case of *Hartung v. People*, 22 N. Y. 95, and concurrent cases in the state of New York, as to whether death or imprisonment for life is the severer penalty; but it is clearly the dictate of the first, fresh, blushing judgment of mankind, that *death* is the extreme penalty that can be inflicted upon a human being, and that any change of the law by which it can possibly be averted, or even postponed, is a mitigation of the penalty. In speaking of the rule established in New York, Judge Cooley approves it, but with a qualification that controls this case, and that qualification is, that "the substitution of any other punishment for that of death must be regarded as a mitigation of the penalty." (Cooley's Const. Lim. 272.) This qualification, so strongly grounded on common sense, is well supported by expressed opinion: 1 Bish. Cr. Law, § 219; 40 Ala. 21; 1 Blackf. 193; 65 N. C. 311; 3 Dall. 390; 3 Chand. 109; 16 Ga. 102; 3 N.

H. 473; 39 id. 180; 23 Miss. 261; 7 Tex. 69; 2 Rich. (S. C.) 418. A statute is *ex post facto*, not where the punishment is merely changed, but only when it is aggravated. (65 N. C. 311, and the cases cited above.) As to the changes made by the act of 1872, it is sufficient to say that these are mere matters of practice, and not within the purposes of the constitution. (9 Wall. 35; 46 Cal. 114; Cooley's Const. Lim. 272.)

3. If this question can be raised by *habeas corpus*, and if it be adjudged that the judgment is invalid because the act of 1872 is, as to this petitioner, *ex post facto*, then the remaining question is, what judgment shall be entered by this court? If the prisoner could not be sentenced under the act of 1872, he clearly could be under that of 1868. We do not mean to be understood as arguing that he could be sentenced under either act at the discretion of the court, although it is possible that he might if he had made a seasonable election as to which penalty he would prefer. (23 Miss. 261; 2 Texas, 363; 6 id. 347.) But what we do confidently claim is, that if the act of 1872 is unconstitutional as to him, then it will be presumed not to have been intended to apply to him, and, by virtue of the statute (Gen. Stat., ch. 104, §1), he would suffer the penalty of the old law. (*State v. Boyle*, 10 Kas. 113; *State v. Crawford*, 11 id. 32.) If this be so, then the question still recurs, what shall be done here? Must this court discharge the prisoner, or can it pronounce the proper judgment, or send him to the trial court to receive the same? We find nothing in the *habeas-corpus* act which countenances any disposition of the cause except to either discharge or remand. There is some apparent difficulty in an attempt by this court to exercise the powers it has when sitting as an appellate tribunal, and at the same time to modify the judgment of, or issue any order upon, the court below. But whatever view the court may take of this question, the very difficulties surrounding it are very strongly suggestive that the proper way to have brought this whole case here is by appeal, and not by *habeas corpus*.

31—22 KAS.

The opinion of the court was delivered by

HORTON, C. J.: The questions presented to this court for decision are—

*First,* Whether the punishment under ch. 166, Laws 1872, applies to offenses committed prior to that act?

*Second,* If the provisions of ch. 166, Laws 1872, are not applicable in this case, whether the prisoner can be relieved under a petition for a writ of *habeas corpus?*

If the act of 1872 is an *ex post facto* law, it is unconstitutional, and void, as the legislature cannot pass such a law. The supreme court of the United States has defined an *ex post facto* law to be one which renders an act punishable in a manner in which it was not punishable when it was committed. (*Fletcher v. Peck,* 6 Cranch, 138.) This definition is subject to the qualification that where the new law mitigates the character or punishment of a crime already committed, it does not fall within the prohibition of the constitution, for it then is in favor of the citizen. As the law of 1872 prescribes a year's imprisonment at hard labor in the penitentiary in addition to the punishment of death, if intended to apply to murder previously committed, it certainly changes the punishment authorized to be inflicted when the crime was committed. Counsel for the state contend, however, that the practical effect of the act is to change the punishment of death to imprisonment for life; and that therefore the law is valid as to offenses already committed, even if thereby it is retrospective in its operation, because such change mitigates the penalty. The reasoning is not sound, as the convict can be executed at the pleasure of any executive magistrate, at any time after one year. One governor may refuse to issue his warrant for the execution of the sentence, but his successor may determine otherwise, and order the hanging of all the convicts. Under the act, every moment of the prison life of the convict, after the expiration of one year, like the alleged lot of Damocles, is embittered by the dread of impending death. The sword is indefinitely suspended over his head, ready to fall at any time. Some

argument may be presented, that the postponement of the execution of a death sentence a single year modifies the penalty. Much theorizing may be indulged in upon this point, but all of this is mere speculation. We cannot open the curtain of the future, nor foretell the ultimate condition of a convict after death. We have no absolute means of saying whether the old or the new law would be the more severe in a given case, and hence we cannot affirm that said act of 1872 mitigates the punishment. The courts of New York hold that a law similar to this one, which was substituted for a law like ours in force prior to the passage of said act, inflicts a greater punishment than the former law, and Judge Cooley coincides with that view in his Constitutional Limitations. Therefore, if we regard said act of 1872 as retrospective, it is within the condemnation of the national constitution, and void. (Cooley's Const. Lim. 256, 272; *Hartung v. People*, 22 N. Y. 95; *Hartung v. People*, 26 N. Y. 167.) This conclusion leads us to decide that as the murder with which the petitioner stands charged was committed in 1866, and as the law of 1872 was not passed until after the commission of the offense, the prisoner is not subject to the punishment of the act of 1872. If he is not exposed to the infliction of any penalty under the statutes in force prior to the act of 1872, then as that act cannot apply in this case, the sentence and judgment are wholly void.

1. Provisions of ch. 166, Laws of 1872, if retrospective, are void.

If such sentence and judgment are wholly void, and not merely irregular or erroneous, then the petitioner is entitled to his discharge. This brings us to consider the effect, as an original question, of the repealing clauses of the act of 1872. In the opinion of the writer, it was the manifest intent of the legislature to have the act of 1872 apply retrospectively in all cases where the convict or person guilty of murder in the first degree had not been sentenced prior to that act going into effect; that the law-makers supposed they had the power to enact such legislation, and intended, by the repealing sections of the act of 1872, to expunge the sections therein repealed as completely as though they had never existed

This court, however, has decided, upon full argument and a careful consideration of the case, very differently, in the case of *The State v. Crawford*, 11 Kas. 32; and my brethren think that case should be adhered to.

2. State v. Crawford, 11 Kas. 32, followed.

Under that authority, the action of the legislature, in adopting the act of 1872, did not release the petitioner from the penalty of his offense, and the district court did not lose jurisdiction with the return of the verdict of the jury. Under the verdict, he was liable to be sentenced to the punishment of death. The sentence actually passed, omitted the appointment of a day on which the sentence should be executed, and provided that the governor should set the day of the execution at a time not less than one year from the day of sentence; but this was an irregularity, or rather an erroneous order, to carry out the sentence of death, and not a void judgment. The court had jurisdiction of the person of the prisoner and of the offense. The verdict was valid. The court had also the power to render a judgment of death, and therefore the petitioner cannot be relieved on *habeas corpus*, as our statute declares that no court or judge shall inquire under a petition for *habeas corpus* into the legality of any judgment or process whereby a party is in custody upon any process issued on any final judgment of a court of competent jurisdiction. This court cannot furnish any remedy to the petitioner in this proceeding. In other words, the proceeding by *habeas corpus* is not the proper manner to correct or review the sentence in this case. Upon an appeal, all the rulings of the district court may be reviewed, and the erroneous judgment be set aside or modified, as the legal rights of the petitioner shall demand.

3. Petition for habeas corpus; when no relief under.

The petitioner must be remanded to the custody of the warden.

BREWER, J., concurring.

VALENTINE, J., concurring specially, as follows:

VALENTINE, J.: This is an action of *habeas corpus* brought by George W. Petty, for the purpose of obtaining a release

from imprisonment in the penitentiary. He was charged, tried, convicted and sentenced in the district court of Greenwood county, a court of competent jurisdiction, for murder in the first degree, and is now being confined in the penitentiary in pursuance of said sentence. Our statutes relating to *habeas corpus* provide, among other things, as follows:

"No court or judge shall inquire into the legality of any judgment or process whereby the party is in custody, or discharge him when the term of commitment has not expired in either of the following cases: . . . . *Second, Upon any process issued on any final judgment of a court of competent jurisdiction.* . . . . *Fourth,* Upon a warrant or commitment issued from the district court, or any other court of competent jurisdiction, upon an indictment or information." (Gen. Stat. p. 763, § 671.)

And see case of *Ex parte Nye,* 8 Kas. 99, 100, holding that this statute means what it says.

But the petitioner says that the district court of Greenwood county was not a court of competent jurisdiction for the trial of this case, for the following reasons, to wit: The act fixing the punishment for the offense, at the time the offense was committed, was subsequently repealed; and the act fixing the punishment at the time, and under which he was convicted and sentenced, was and is *ex post facto,* unconstitutional, and void. Now the only change with regard to the punishment made in the law since the offense was committed is as follows: At the time when said offense was committed, the punishment for murder in the first degree was death by hanging, in not less than four nor more than eight weeks. (Gen. Stat. 319, 861, 862.) The punishment now for such offense is death by hanging, in not less than one year, and the time may be extended indefinitely; and in the meantime the convict is to be confined in the penitentiary at hard labor.

It is admitted that the punishment for an offense may be legally diminished or lessened by the legislature after the offense has been committed, but it is claimed in this case by the defendant that the punishment has been changed in kind and increased in amount. It is claimed that the imprison-

ment and hard labor fixed by the later act constitute both a change in the punishment and an increase in the amount thereof.

Now murder in the first degree is the highest degree of felonious homicide. It includes within itself all the other degrees — murder in the second degree, and the four different degrees of manslaughter; and the petitioner in this very case (who killed the deceased by shooting him with a pistol) committed all the various degrees of felonious homicide at the same time that he committed the highest degree, and might have been tried, convicted and punished for any one of such degrees, at the election of the prosecution. Thus, he might have been tried and convicted for murder in the second degree, and punished therefor by imprisonment in the penitentiary for life, or for a term of years; or, he might have been tried and convicted for any lower degree of the offense, and a still lighter punishment inflicted upon him. That is, the state, at the time the petitioner committed said offense, had the right, through its prosecuting attorney, to waive all the distinctive elements constituting murder in the first degree, and to waive the distinctive punishment for that degree, and to cause to be inflicted upon the offender only the punishment of imprisonment in the penitentiary; and therefore, as the state could have done all this through its prosecuting officer, can it not also do the same thing through its legislature? If it can, then there can be no difficulty in a change by the legislature of the punishment to be imposed for murder in the first degree, in cases like the one at bar, from death to imprisonment in the penitentiary.

But the petitioner claims that there is not only a change in the punishment, but that there is also an increase in the amount thereof. He claims that under the old law the punishment was death, but that under the new law it is imprisonment and death. Now in all ages and in all countries immediate or sudden death has been considered as the highest of all earthly punishments, and torture alone has been the only other element resorted to to heighten this punishment.

At the time of the passage of the act under consideration, changing the punishment for murder in the first degree, and ever since such time, it has been believed that the act was one lessening the punishment for murder in the first degree, instead of an act increasing it. And is not this belief correct? Suppose a man in the ordinary course of nature is to live ten years: now would it not be a greater punishment to him to take from him the whole of that ten years by executing him immediately, than to permit him to live one year or more, even in a penitentiary, and then to take only nine of those years from him? But under the new law, convicts are not in fact executed at the end of the first year, and they may never be executed. There has not been an execution in Kansas since said new law was passed, a period of over seven years. As long as men live, there are always hopes of a better future. Even convicts hope for pardon and liberty and a long life.

But suppose that said new law is void so far as it affects the punishment for murder in the first degree where the offense was committed prior to the passage of the law, then might not the offender still be punished as for murder in the second degree, or for some lower degree of felonious homicide? And if he might, then is not the present imprisonment of the present petitioner lawful, even if that portion of the sentence ordering him to be executed is void? A conviction for murder in the first degree is in a case like this a conviction also for murder in the second degree, and imprisonment in the penitentiary for murder in the second degree is lawful. Would the excess in the charge (the information in this case charging murder in the first degree), and the excess in the conviction (the conviction also being for murder in the first degree), invalidate the sentence if rendered as for murder in the second degree, if the state should accept such a sentence? The sentence might in such a case, or in any given case, be irregular, but would it be void?

But according to the case of *The State v. Crawford*, 11 Kas. .32, 46, the petitioner should have been sentenced under the old law. When that case was decided, we had all the light

that we have since received.   It was submitted to us by able
and industrious counsel.   But the petitioner in this case says
that said old law was repealed before this case was tried.   Ac-
cording to the following authorities, however, the statute
(said old law) was not absolutely repealed, but was kept in
force and alive for all cases of this kind by the general saving
clause found in the "act concerning the construction of stat-
utes," Gen. Stat. 998, § 1.   Said authorities are as follows:
*Willetts v. Jeffries*, 5 Kas. 473;  *Gilleland v. Schuyler*, 9 Kas.
569;  *State v. Boyle*, 10 Kas. 113, 116, 117;  *State v. Crawford*,.
11 Kas. 32, and others.   Said general saving clause reads as
follows:

"In the construction of the statutes of this state, the fol-
lowing rules shall be observed, unless such construction would
be inconsistent with the manifest intent of the legislature, or
repugnant to the context of the statute: *First*, The repeal
of a statute does not revive a statute previously repealed, nor
does such repeal affect any right which accrued, any duty
imposed, any penalty incurred, nor any proceeding com-
menced under or by virtue of the statute repealed. · The
provisions of any statute, so far as they are the same as
those of any prior statute, shall be construed as a continua-
tion of such provisions, and not as a new enactment." (Gen..
Stat. 998, 999.)

The petitioner seems to admit that in all ordinary cases of
repeal, the foregoing saving statute would apply and save all
rights of the state and of all other parties.   But he says this
is not an ordinary case of repeal.   He does not say in words
that it was "the manifest intent of the legislature" that all
murderers who had committed murder in the first degree
prior to the passage of the act of 1872, and who had not
been convicted at that time, should go absolutely free; but
his logic leads to that result.   He says that it was "the man-
ifest intent of the legislature" that the old law should be
repealed; and he further says that the new law of 1872 can-
not have operation, because it is *ex post facto*, unconstitutional,.
and void.   And therefore he says that he should go abso-
lutely free.

The repealing clause of the act of 1872 reads as follows: "Sections 258 and 259 of the act to which this is amendatory, *and all other acts inconsistent herewith, be and the same are hereby repealed.*" (Laws 1872, p. 338, § 6.) The petitioner relies entirely upon the above words in italics; but his logic is lame. He says that all of the act of 1872 relating to punishment for past offenses is void, because it is *ex post facto;* and yet he says that it is *valid enough* to drive all other acts inconsistent therewith out of existence. He says that his sentence is void because he was sentenced under the new law (that of 1872), which new law he says is void. He also says that he could not legally be sentenced under the old law, because it is inconsistent with the new law relating to punishments for past offenses, and is therefore, by the new law, repealed. And he further says, that any saving clause continuing the old law in force for any purpose would be inconsistent with this new and void law; and therefore that this new and void law would repeal the saving clause, or at least prevent its operation in this particular case. Now, I do not think that any valid law can be repealed merely because it is inconsistent with some new law, unless this new law is itself valid. A void enactment certainly cannot have the effect to repeal a valid law; and repeals by implication are never favored, even where the repealing law is itself valid.

In my opinion, the petitioner should not be discharged from custody.