## THE STATE OF KANSAS v. FRANK P. GOULD.

1. INFORMATION — *Slight Amendment, not Error.* It is not error in a criminal case for the court to permit a slight amendment to be made to the verification of the information.

2. CRIMINAL CASE — *Appeal — Defendant's Sanity, or Insanity, the Material Question.* In a criminal case where the charge is sufficient, and where it was unquestionably established on the trial and not denied that the defendant was guilty of the offense charged against him unless he was insane at the time, the only material questions to be considered on appeal to the supreme court are such as relate in some manner to the defendant's sanity or insanity.

3. DISTRICT COURT—*Jurisdiction not Taken away by Probate Court.* Where the district court has jurisdiction of a criminal case, its jurisdiction

Statement of the Case.

to try such case cannot be taken away by the commencement of proceedings in the probate court for the purpose of having the question determined whether the defendant was sane or insane.

4. DEFENDANT'S SANITY, OR INSANITY — *Practice.* In a criminal case where it is claimed that the defendant was insane at the time of the commission of the alleged offense, and is still insane, the question of the defendant's sanity or insanity may be tried along with all the other questions in the case.

5. ABSENT WITNESS — *Continuance, no Error in Refusing.* Where a defendant in a criminal case has exercised only slight diligence to procure the attendance of a witness to prove an unimportant fact relating to the defendant's conduct on a particular day, and this for the purpose of proving alleged insanity, and where numerous other witnesses could easily be obtained to prove the defendant's conduct for many years, *held,* that the trial court did not err in overruling an application for a continuance on account of the absence of such witness.

6. JURY — *Overruling Defendant's Challenge, not Error.* Held, that the trial court did not commit material error under the circumstances of the case in overruling the defendant's challenge for cause of certain persons who were being examined upon their *voir dire* to serve as jurors.

7. EXPERT TESTIMONY, *no Error in Admitting.* Also *held,* that the trial court did not err in admitting the testimony of certain physicians and surgeons.

8. JURY — *Misconduct — New Trial, when not Granted.* Where it is claimed that there was misconduct on the part of one or more jurors, a new trial should not be granted where it is unquestionably shown that such supposed misconduct did not prejudice any of the substantial rights of the defendant.

## Appeal from Osage District Court.

PROSECUTION for murder in the first degree. At the August term, 1887, the defendant, *Frank P. Gould,* was tried, found guilty of murder in the second degree, denied a new trial, and sentenced to imprisonment in the state penitentiary for twenty years. He appeals. The material facts are stated in the opinion.

*James S. Callen,* for appellant.

*S. B. Bradford,* attorney general, and *H. B. Hughbanks,* county attorney, for The State.

The opinion of the court was delivered by

VALENTINE, J.: This is a criminal prosecution for murder in the first degree, wherein the defendant, Frank P. Gould, was charged with shooting, killing and murdering his wife, Ella M. Gould, on March 28, 1887, in Osage county, Kansas. The defendant was tried before the court and a jury, and found guilty of murder in the second degree, and was sentenced to imprisonment in the penitentiary for the term of twenty years.

It appears from the record brought to this court that on March 28, 1887, the defendant shot and killed his wife; that on April 8, 1887, he had a preliminary examination with reference thereto, and that on the same day a criminal information was filed against him in the district court charging him with the aforesaid killing, and with murder in the first degree.  The court was then in session, and at some time during that term and on the application of the defendant, the court continued the case to the next term of the court, to be held in June, 1887, for the purpose of enabling the defendant to prepare for trial.  On April 12, 1887, proceedings were commenced in the probate court for the purpose of having the question determined whether the defendant was sane or insane, and on May 25, 1887, these proceedings resulted in a verdict by a jury impaneled in that court, finding that the defendant was insane.  Neither the county attorney nor any public prosecutor had anything to do with these proceedings.  They were evidently instittued for the benefit of the defendant.  Afterward, but just when is not shown, the aforesaid verdict was set aside by the probate court.  The June term of the district court commenced on June 20, 1887.  On June 23, 1887, the county attorney, with leave of the court, amended the aforesaid information, but in what particular is not shown, but probably it was only a slight and unimportant amendment of the verification.  On the same day the defendant filed a plea in abatement, to which plea the state demurred, and the court sustained the demurrer and overruled the plea.  On June 30, 1887, the defendant had a subpena issued for L. E. Finch,

who was a resident of Osage county. On July 11, 1887, the defendant moved for a continuance upon the ground of the absence of Finch, who was then in the Indian country. This application for a continuance was overruled, and the court then proceeded to impanel a jury to try the case, and a jury was impaneled and the trial proceeded until July 16, 1887, when the jury returned a verdict finding that the defendant was guilty of murder in the second degree as aforesaid. The defendant then filed a motion for a new trial, which motion was heard by the court on July 19, 1887, and overruled. On May 21, 1888, the defendant appealed to this court.

We think the information in this case was amply sufficient, and was also sufficiently verified. It was filed by Henry B. Hughbanks, county attorney, and was twice verified by him, each of which verifications was sufficient. The one made on June 23, 1887, we suppose is the amendment to the information of which the defendant complains. No error was committed in permitting such an amendment.

1. Information—slight amendment, not error.

Assuming that the information is sufficient and sufficiently verified, and that the prosecution was in all respects properly instituted in the district court, then the only substantial questions involved in the case would be and are under the unquestionable facts of the case, such only as relate to the defendant's sanity or insanity. That the defendant shot and killed his wife as charged in the information, and in so doing committed murder in at least the second degree, unless he was insane and incapable of committing such an offense, is so well established by competent evidence and so little disputed, and indeed not disputed at all, that it is wholly unnecessary for us to discuss any of the questions presented in this case except such only as relate to the defendant's sanity or insanity. The defendant claims that he was insane not only at the time he killed his wife, but also before and afterward, and continuously up to, and at the time of, the trial, and that his insanity was of such a character that he was not capable of committing the offense of mur-

2. Criminal case—appeal—defendant's sanity, or insanity, the material question.

der, or indeed any other offense. We shall discuss at length only such of the questions presented to this court as are connected in some manner with the question of the defendant's sanity or insanity. All other questions under the unquestionable facts of this case are wholly immaterial and unimportant.

The plea in abatement was rightfully overruled. The plea in substance was, that the question as to whether the defendant was sane or insane was then pending in the probate court.

3. District court—jurisdiction not taken away by probate court.
But the district court obtained jursidiction of the case before any attempt was made to give the probate court jurisdiction, and the district court was not bound to surrender its jurisdiction to the probate court. It had the right to retain its jurisdiction, and to put the defendant upon trial with respect to the question of sanity or insanity, as well as with respect to all the other questions involved in the case. Also the verdict rendered in the probate court, finding the defendant to be insane, had, at the time of the filing and the hearing of this plea in abatement, been set aside by the probate court.

The practice has been well established in this state that the question of sanity or insanity in a criminal case, where it is claimed that the defendant was insane at the time of the commission of the alleged offense, may be tried along with all the other questions in the case. Among other case see

4. Defendant's sanity, or insanity—practice.
the following: *The State v. Crawford*, 11 Kas. 32; *The State v. Mahn*, 25 id. 182; *The State v. Nixon*, 32 id. 205; *The State v. Mowry*, 37 id. 369; *The State v. Yarborough*, 39 id. 597, 598. Where the supposed insanity occurs subsequently to the commission of the alleged offense, probably a different practice should govern; and even where the insanity, claimed to have existed at the time of the commission of the alleged offense, is claimed to still exist at the time of the trial, the court might perhaps in its discretion adopt some other practice than that of trying all the questions at one and the same time. We think, however, no error was committed in this case because of the court's trying the case as it did.

It is claimed by the defendant that the court below erred in overruling his application for a continuance made on July 11, 1887. Prior to filing this application he had interposed various other dilatory matters, and had exercised but very little diligence to be ready for trial. At the April term of the court the case was continued by the court at his instance to the June term, for the purpose that he might prepare for trial, but it does not appear that he made any preparation therefor, prior to the time when the June term commenced. At the June term of the court, and on June 22, 1887, he filed another application for a continuance, but this application was overruled, and the case was set for trial on July 11, 1887. On June 23, 1887, the defendant moved to quash the information, but this motion was overruled. On the same day he filed his plea in abatement, which was overruled as aforesaid. On the same day he asked to have the case transferred to some other county for trial, but this was refused. On June 30, 1887, he had a subpena issued for L. E. Finch, who was a resident of Osage county, but who was then absent from the state. When July 11th arrived, and at which time the case had been set for trial, and was then called for trial, the defendant again moved for a continuance, and at this time for the purpose of procuring the testimony of L. E. Finch. The testimony of Finch which the defendant desired to procure, was very unimportant. It was for the purpose of proving or tending to prove the insanity of the defendant. And it was simply a statement of what the defendant said and did in the presence of Finch in Kansas City, Missouri, on a certain day in June, 1886, more than one year before the trial, and nearly one year before the homicide was committed. Now with the abundance of witnesses which the defendant could easily have procured to testify with regard to his conduct at any time and at all times prior to the trial, and prior and subsequent to the homicide, even for years prior thereto, the single unimportant fact which the defendant could have proved by Finch was certainly of but very little importance in the case, and we cannot say that the court below erred in refusing to grant the continuance for the purpose of procuring Finch's

5. Absent witness—continuance, no error in refusing.

testimony, and especially we cannot say so when the defendant had exercised so little diligence to procure such testimony. And further, a large number of witnesses did testify in the case on behalf of the defendant with regard to his conduct at various times for many years prior to the homicide in question. His mother also testified in the case. He was then between thirty-three and thirty-four years of age; had been married about eight years, and had three children. After this application for a continuance was overruled, the defendant asked for further time in which to amend such application, but without stating how or in what particular he desired to make the amendment. This application for further time was refused. No error was committed in this respect.

The defendant claims that the court below erred in overruling his challenge for cause of the persons, Naylor, Woodward, Judd and Smith, to serve as jurors in the case. These persons were examined upon their *voir dire,* and it was shown that each of them had a slight and indefinite opinion obtained from newspapers or rumors that the defendant had shot and killed his wife; but it is not shown that any one of them had any opinion of any kind with respect to the defendant's sanity or insanity, and afterward each of them was challenged peremptorily, and no one of them served as a juror in the case. It may be that the court below erred in overruling the defendant's challenge for cause. (*City of Salina v. Trosper*, 27 Kas. 544; *The State v. Miller*, 29 id. 44.) But still, as it is not

6. Jury—over-ruling defendant's challenge, not error. shown that these persons had any opinion with regard to the defendant's sanity or insanity, which was really the only controverted question in the case, the error of the court, if any was committed, was wholly immaterial. (*The State v. Wells*, 28 Kas. 321.) And we think the error was also rendered immaterial for the reason stated in the following cases: *Morton v. The State*, 1 Kas. 468, 473 *The State v. Furbeck*, 29 id. 532.

The defendant also claims that the court below erred in permitting the expert testimony of certain physicians and surgeons to wit, doctors Schenck, Artz, Cazier and Longley, to be given

to the jury, and this because they had not heard all the testimony. With respect however to Dr. Schenck, he, in answer to the question "Were you present during all the testimony?" answered, "All, I believe." Besides, no objection for the reason that he did not hear all the testimony, was made to his testimony in the court below. With respect to Dr. Artz, he, in answer to the question "You have heard the testimony here with regard to the condition of the mind of this defendant?" answered, "Yes, sir." With respect to Dr. Cazier, he gave his opinion from his own personal knowledge, and not from the testimony heard in the case. With respect to Dr. Longley, he heard nearly all the testimony in the case, substantially all except that of Mrs. Rulison and Mr. Sutton, and their testimony was given on behalf of the state, and was not favorable to the defendant; besides, he did not pretend to give an opinion upon the whole of the testimony in the case, but only upon so much of the same as he had heard. And further, the court gave to the jury the correct rule of law upon this subject, and his testimony was excluded. The court stated to the jury upon this subject as follows:

"I will say to you, gentlemen of the jury, that so far as the testimony of Dr. Longley goes in regard to this question that was asked him as an expert, that you may disregard it; the fact that he has not heard all the testimony on the subject itself would be sufficient to warrant me in withdrawing it from your consideration."

7. Expert testimony, no error in admitting. We think no material error was committed in admitting expert testimony.

8. Jury—misconduct—new trial, when not granted. With respect to the supposed misconduct of two of the jurors, we think it can be said with certainty that it was unquestionably shown that it did not prejudice any of the substantial rights of the defendant. And if it was misconduct at all, it was certainly very slight. Certainly a new trial should not have been granted for this supposed misconduct.

The judgment of the court below will be affirmed.

All the Justices concurring.