HIRAM FOSTER v. JOHN BROST, *et al.*

SETTLER ON PUBLIC LANDS; *Contract to Sell, before Entry.* A settler upon the Osage Diminished Reserve does not forfeit his right to purchase from the government the land he has settled upon and occupies by merely agreeing before he has so purchased the same to convey a portion thereof, by way of compromise, to an individual who is contesting his right to so purchase; but if he complies with all the provisions, fulfills all the conditions and satisfies all the terms of the act of congress of July 15, 1870, regarding settlers purchasing lands from the government, he may pur-

chase his land from the government under said act, whether he could pre-empt the same under the act of September 4th, 1841, or not.

*Error from Montgomery District Court.*

ACTION by *Foster*, to establish a trust, and compel trustees to convey title. The facts are fully stated in the opinion. A demurrer to the plaintiff's petition was sustained, at the August Term 1872 of the district court, and plaintiff brings the case here.

*J. D. McCue*, for plaintiff in error:

1. The prevention of litigation is a valid and sufficient consideration, and the law favors the settlement of disputes. It is said that the compromise of a pending litigation is a favored consideration. 1 Pars. on Contr., 438.

2. The facts stated in the petition disclose a case of actual fraud on the part of the defendant Brost, and are sufficient to create a constructive trust in the land in favor of plaintiff. Constructive trusts are such as are raised by equity in respect to property that has been acquired by fraud: 2 Washb. on Real Property, 177. Fraud is defined to be, any kind of artifice by which another may be deceived. All surprise, trick, cunning, dissembling, and any other unfair way that is used to cheat any one, is considered a fraud: 2 Maddock's Ch., 256.

The law requires of each individual in society, that in transactions with his fellow man he act honestly and truthfully. It abhors all tricks and cunning by which an undue or unconscientious advantage is taken, and treats every intentional departure from the plain rules of common honesty as fraudulent. Equity in administering a corrective in cases of this character applies a summary remedy, and converts the wrongdoer into a trustee, and the injured person into a *cestui que trust*. And it is but the dictate of a sound morality when Brost, for his own advantage, has injured Foster by his fraudulent actions, and has possessed himself of the property or rights which belonged to Foster, that he shall not be per-

mitted to enjoy the fruits of his wrong-doing, nor that Foster shall be deprived of the advantages intended for his benefit, but justice should be done by converting Brost into a trustee, and compelling him to execute the trust. T. & B., Trusts and Trustees, 193; 3 Wis., 545; 7 Mo., 610; 16 Mo., 543.

3. It will be urged in behalf of defendants, that the compromise set out in the petition is void; that it is in violation of the pre-emption law, and against public policy, and hence the court should not grant the relief prayed for. The same objection was presented in *Snow v. Flannery*, 10 Iowa, 318. That case is on all fours with the case at bar, with this exception: that the remedy there was to compel the specific performance of a parol contract to convey, while this is to decree a trust. The principle in both cases is the same. The court held that the contract sued upon did not violate the law, and was not against public policy, and decreed a specific performance thereof.

But, independent of authority, is the construction claimed warranted by law? The pre-emption law, says Mr. Justice Miller, in *Root v. Shields*, (1 Miller's Dec., 357,) was enacted for the benefit of the settlers of the new states and territories. Would the law be a benefit to settlers if they are prohibited from compromising their contests? To illustrate: two persons make settlement in good faith upon a tract of land previous to survey. They define their boundaries by preliminary surveys; afterward the government surveys are made, and they are thrown upon the same tract of land. Their improvements and residence are upon the same tract; their settlements were made at the same time; both have equal rights, and both are *bona fide* settlers; by the rules of the land office they cannot make a joint entry, nor will the government permit the land to be divided. Unless they are permitted to compromise they must contest for the right, or one must withdraw, and abandon his claim. A contest involves great expense of both time and money. If the law is to receive the construction contended for, then in the case supposed it fails to convey the benefit intended.

In all other classes of cases the law, as we have seen, favors the settlement of disputes, and makes the settlement a sufficient and highly favored consideration. Why it should deny it in this case I am unable to perceive.

But there is another error, in the assumption that the rule providing for the disposition of the public lands under the pre-emption law, is applicable to the case at bar. The petition alleges that the land in controversy was a part of the "Osage Diminished Reserve." This reservation is sold under the provisions of § 12, of the act of July 15, 1870. There is no requirement in this law that the party shall make the oath required by § 13 of the pre-emption law. The land shall be sold to actual settlers only. This is the only requirement, that the person making the application is an actual settler. He is not, by the provisions of the law, required to make oath that he makes the entry for his own benefit. If this oath is required, it is by some rule of the Interior Department, of which the court will not take judicial cognizance. The court will not presume a contract to be illegal; and the court will not deny the plaintiff the relief sought, unless the due administration of the law demands it.

*B. M. Armstrong*, for defendants in error:

1. The alleged agreement was made in violation of § 12, of the act of congress, September 4th, 1841, which provides, among other things, that "all assignments and transfers of the right hereby secured, prior to the issuing of the patent, shall be null and void." The applicant to purchase land situated on the Osage Diminished Reserve, is required by the Interior Department to take an oath similar to the oath prescribed by the act of congress of September 4th 1841.

2. The contract or agreement upon which the plaintiff relies as the foundation of his action, is in violation of law, and against public policy, and therefore void. 1 Pars. Contr., 380; 1 Ohio St., 265; 4 Ohio, 419. "In general, if any part of the entire consideration for a promise, or any part of an entire promise, be illegal, whether by statute or at common

law, the whole is void. Indeed the courts go far in refusing to found any rights upon wrongdoing." 20 Ohio, 435; T. & B., Trusts and Trustees, 129.

The only case produced by the plaintiff to support his view, that the contract or agreement upon which he relies for a foundation to his cause of action is the case of *Snow v. Flannery,* 10 Iowa. In that case the court says: "It was the evident design of congress, in the passage of this act," (referring to the act of September 4th, 1841,) "and all acts upon the subject, to protect the rights of *bona fide* settlers upon the public lands, and to prevent those who did not wish to enjoy this privilege from speculating upon this bounty offered by the government to the settler in good faith. It is the right thus given to the settler, the transfer of which is prohibited. After the title-papers from the government to the pre-emptor, the government has no control over the same. The pre-emptor has paid his money for the land, the title of the government therein is extinct, and the purchaser has a right to sell or dispose of the same as he may see fit." This we do not deny. After the pre-emptor has paid his money, and the title-papers from the government have passed to the pre-emptor, he undoubtedly has a right to sell or dispose of the land acquired thereby as he may see fit. But how that proposition goes to establish, that an agreement or sale made *before* the title-papers are acquired by the pre-emptor, can be enforced or made the basis of an action, does not so clearly appear from the opinion of the court.

But there is a distinction between the case at bar and the case of *Snow v. Flannery.* In that case the parties had acted upon the good faith of the contract, the plaintiff had withdrawn his filing, thereby allowing the defendant to enter the land as agreed upon; and the defendant had received a benefit as per the agreement. In the case at bar, it is not claimed that both parties acted or even relied upon their wrongful and void agreement, or that Brost received any benefit, unless it be that he avoided contest in the U. S. District Land-Office. However, it is alleged in plaintiff's petition that he, relying

upon the said agreement, did not attend said land-office on the day said contest was set for hearing.  If the agreement was void, as we insist it was, then he had no right to rely upon it.  If it was valid, as the plaintiff insists it was, then Brost, by disregarding it, relieved the plaintiff from his obligation to commit the crime of perjury.

The opinion of the court was delivered by

VALENTINE, J.: The petition in the court below shows that the plaintiff Hiram Foster, in February 1871, settled upon and afterward occupied and improved a certain eighty-acre tract of land situated in the Osage diminished reserve, with the intention of purchasing it from the government of the United States; that afterward one John Brost, one of the defendants in this action, also claimed the right to purchase said land, and instituted a contest therefor in the proper land-office, which contest was to be heard on the 29th of October 1871; that prior to the hearing of said contest, to-wit, on September 12th 1871, the said Foster and Brost compromised their matters of difference by agreeing with each other that Foster should purchase the whole of said land from the government and then convey the west-half thereof to Brost, Brost paying therefor fifty dollars; that at the time of said compromise Brost executed a quitclaim deed for said land to Foster; that Foster, relying upon said compromise, did not appear at said land-office at the time said contest was to be heard, but Brost did appear, and then fraudulently, and in violation of his said agreement, purchased the whole of said land from the government; that afterward Brost conveyed said land to his wife, and mortgaged it to one John H. Ellinger, both of whom are defendants in this action, and both of whom had full knowledge of Foster's rights in the premises.  The plaintiff asks to be allowed to pay the defendants the sum of fifty dollars, the entrance fee for the east-half of said land, and then to have a decree in his favor giving to him the east-half of said land.  The defendants demurred to this petition on the ground substantially that

the petition does not state facts sufficient to constitute a cause of action. The court below sustained the demurrer, and the plaintiff excepted, and now brings the case to this court for review.

Does said petition state facts sufficient to constitute a cause of action? We think it does. The only objection that seems to be urged against it, is, that it shows upon its face that the plaintiff made an illegal contract with reference to said land, and thereby forfeited his right to purchase the same or any part thereof from the government; and we are referred to the act of congress of September 4th 1841, (5 Stat. at Large, 456, §§ 12, 13,) concerning pre-emption entries, in proof thereof. We think however that said act of congress of September 4th 1841 is not applicable to this case. The plaintiff's rights, as we think, are not necessarily determined by that act, but are governed by § 12 of the act of congress of July 15th 1870, (16 Stat. at Large, 362.) If we are correct in this, then the plaintiff made no illegal contract or agreement. Under the act of July 15th 1870 the plaintiff had a perfect right, before he purchased his land, to make a contract to sell and convey a portion of the same or all of it, if he so chose, without forfeiting his right to purchase any part thereof from the government. We do not wish however to be understood as deciding that persons cannot pre-empt lands within the said Osage diminished reserve under the act of September 4th 1841. All that we desire to say is, that they are not bound to do so; that if they comply with all the provisions, fulfill all the conditions, and satisfy all the terms of the act of July 15th 1870, regarding settlers purchasing lands from the government, they may purchase their lands under said act, whether they could pre-empt the same under the act of September 4th 1841 or not. But if the act of September 4th 1841 is applicable to this case, then how did the defendant John Brost, after executing said deed of conveyance for all of said land to the plantiff, purchase the land from the government? Did he commit perjury? If said compromise was not illegal, we suppose it will hardly be claimed that it

was so much against public policy that the plaintiff forfeited his right to purchase his land by making the contract. The record does not disclose what the rules or the practice of the land-office were with reference to settlers purchasing lands on the Osage diminished .reserve, from the government. But that makes but little difference; for neither the officers of the local land-offices nor the commissioner of the general land-office, nor even the Secretary of the Interior, have any power to make laws. They are all governed by the laws of the United States made by proper authority, as much as other people are, and are bound to allow settlers to purchase their lands in any manner which the law may prescribe.

The judgment of the court below is reversed, and cause remanded, with the order that said demurrer be overruled.

All the Justices concurring.