## JAMES A. BRAKE v. GEORGE W. BALLOU.

PAROL CONTRACT RELATING TO LANDS; *Act of Congress; Osage Diminished Reserve; Trusts; Fraud Upon the Government.* Under section 12 of an act of congress of 15th July 1870, certain lands on the Osage Diminished Reserve could be sold by the United States to actual settlers, and to actual settlers only; but the plaintiff, who was not an actual settler, procured the defendant to enter upon a certain quarter-section of said land and purchase the same from the United States in his own name, as an actual settler, the plaintiff furnishing the purchase-money and all other necessary means therefor. All this was done under a parol agreement between the parties that as soon as said purchase was completed the defendant should convey said land to the plaintiff, and the plaintiff in consideration therefor should "convey to the defendant eighty acres of good bottom land, with sufficient timber thereon to improve said eighty acres for farming purposes." After the defendant purchased said land as aforesaid, the plaintiff offered to fulfill his part of said contract, but the defendant refused to convey to the plaintiff any portion of said land. The plaintiff then commenced this action to procure title to the same. *Held*, That as said contract was a parol contract, concerning the purchase and conveyance of lands belonging to the United States made in violation of the spirit of the laws of the United States, and in fraud thereof, it cannot be enforced specifically or otherwise by a court of equity; and taking said contract, together with all the facts of this case, no trust estate in said lands resulted therefrom in favor of the plaintiff which can be declared or enforced by a court of equity.

*Error from Cowley District Court.*

ACTION by *Ballou*, brought for the purpose of having the entry made by *Brake* of a certain quarter-section of land of

the Osage Diminished Reserve Lands, in Cowley county, declared to have been made by him in trust for the use and benefit of *Ballou*, and to obtain a conveyance of the north half of it from *Brake*, on the grounds that the parties had, prior to the entry, made an agreement attempting to create such a trust, and that in consequence of such oral agreement *Brake* had settled upon and improved and entered the land in his own name, and *Ballou* had let him have money to enter it and make some improvements thereon. A demurrer to the petition was overruled, and after answer filed, the action was tried at the September Term 1874. of the district court. The court found in favor of plaintiff, that "the defendant holds the legal title to the quarter-section of land above described in trust for the plaintiff, which trust he in equity and good conscience ought to be compelled to fulfill," and gave judgment compelling the execution of a deed of conveyance passing the legal title to said lands to plaintiff. *Brake* excepted, and now brings the case here on error for review.

*Buck & Kellogg*, for plaintiff in error.

*E. S. Torrence*, and *L. J. Webb*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: The defendant in error (plaintiff below) states the facts of this case as follows:

"In the month of March 1871, the parties entered into a verbal contract, the terms of which were in substance, that Brake was to settle upon the land in controversy, the same being a quarter-section of the Osage Diminished Reserve, situated in Cowley county, and enter the same at the U. S. Land-Office for the benefit of Ballou, who was to furnish the money to make the improvements on the land necessary to enter the same under the laws of the United States, and also furnish the money to enter and pay for the land, and convey to Brake eighty acres of good bottom land, with sufficient timber thereon to improve said eighty acres for farming purposes. Afterward, Ballou did furnish the money to make the necessary improvements upon said quarter-section of land

and to pay for and enter the same at the U. S. Land-Office. Brake settled upon and improved said quarter-section of land, and in the month of July 1871, upon making the necessary proof and payment, entered the same at said land-office in his own name. Afterward the parties were unable to agree as to what particular eighty acres should be conveyed to Brake in pursuance of said agreement, and Brake refused to convey any part of said quarter-section to Ballou. Ballou offered to convey to Brake either the north half or the south half of said quarter-section if Brake would convey to him the whole of said quarter-section, to which Brake refused to concede. The south eighty or half of said quarter-section is good bottom land, with sufficient timber thereon to improve the same for farming purposes. In addition to the foregoing facts, the petition also shows that the quarter-section of land in controversy was a part of two claims purchased by Ballou of Thomas Rucker and T. J. Raybell respectively, before the government survey of the Osage Diminished Reserve, for the aggregate sum of $1,175. The money which Ballou furnished for the improvement of said quarter-section amounted to the sum of $300, and the entrance-money furnished by Ballou amounted to the sum of $210."

In his answer in the court below, defendant Brake denied the foregoing allegations of the plaintiff's petition not found by the district court, and also alleged in his answer that Ballou, in consideration of the defendant's agreement, agreed that he (Ballou) would convey to the defendant eighty acres of one of three other particular tracts of land, (describing them,) and that Ballou wholly failed to perform his agreement. The plaintiff, Ballou, in his reply denied these allegations of the defendant's answer. There does not seem however to be any claim by either party in the pleadings or elsewhere that Brake was, under the agreement, to have any portion of the land which he (Brake) entered at the U. S. land-office. The court merely finds upon this subject that the plaintiff was to "convey to the defendant eighty acres of good bottom land, with sufficient timber thereon to improve said eighty acres for farming purposes." Under this finding the eighty acres of land to be conveyed might have been *any* "eighty acres of good bottom land, with sufficient timber thereon to

improve the same for farming purposes," and might have been situated in any place where such an eighty-acre tract of land could have been found. The legal title to the land in controversy passed from the United States by entry and purchase to the defendant below, and is now in him. But the plaintiff below (Ballou) claims that because of said contract and the other facts in this case the equitable title to the land is in himself, and that Brake merely holds the legal title in trust for him, (Ballou.) The defendant below however claims that said contract is void, first, because it is merely in parol, and second, because it is in violation of the laws of the United States; and he also claims that the facts of this case do not and cannot create any trust in favor of the plaintiff below.

Under the laws of this state no express trust can be created except in writing. (Gen. Stat., p. 186, § 8; page 505, §§ 5 and 6; page 1096, § 1; *Franklin v. Colley*, 10 Kas. 260.) And implied or resulting trusts are not now created in all cases where they formerly were under the old chancery practice. Section 6 of the act concerning trusts and powers reads as follows:

"When a conveyance for a valuable consideration is made to one person, and the consideration therefor paid by another, no use or trust shall result in favor of the latter, but the title shall vest in the former, subject to the provisions of the next two sections." (Gen. Stat. 1097.)

Section seven of said act has no application to this case; and the only portion of section eight of said act which has any application to this case reads as follows:

"The provisions of the section next before the last shall not extend to cases where the alienee shall have taken an absolute conveyance in his own name * * * where it shall be made to appear that, by agreement, and without any fraudulent intent, the party to whom the conveyance was made, or in whom the title shall vest, was to hold the land, or some interest therein, in trust for the party paying the purchase-money, or some part thereof."

Under these statutes, if there was no "fraudulent intent" on the part of the plaintiff and defendant in making said

contract, and in entering said land and purchasing the same from the United States in the name of the defendant with the intention and understanding that the title should vest in him for the use and benefit of the plaintiff, then under the facts of this case a trust would result in favor of the plaintiff and he would be entitled to recover in this action. (*Franklin v. Colley*, 10 Kas. 260; *Foster v. Brost*, 11 Kas. 350.) For in such a case the plaintiff would in equity be the real owner of the land. But if there was any such "fraudulent intent" in making said contract, or in purchasing said land as aforesaid, then no such trust would result, and a court of equity would leave the parties where it finds them. (*McTaggart v. Harrison*, 12 Kas. 62; *Tucker v. Allen*, 16 Kas. 324, 325.) The only question then for us to consider is, whether there was any "fraudulent intent" on the part of the plaintiff and defendant. It will probably be conceded by both parties that at the time said contract was made, and at the time said land was purchased, there was no intention on the part of either of the parties to defraud the other; nor was there any such intention until some time after the land was purchased, and until some time after the legal title to the land was vested in the defendant. But the question is not merely whether either of the parties intended to defraud the other, but it is, whether they did not both intend to commit a fraud upon the government of the United States and against the laws of the United States. If they did, then we suppose the plaintiff cannot recover. (See authorities last cited, and *Brewster v. Madden*, 15 Kas. 249.) Said land was purchased from the United States under that provision of section 12 of the act of Congress of 15th July 1870, which reads as follows:

—"Which lands shall be open to settlement after survey, (excepting the sixteenth and thirty-sixth sections, which shall be reserved to the state of Kansas for school purposes,) and shall be sold to actual settlers only, said settlers being heads of families, or over twenty-one years of age, in quantities not exceeding one hundred and sixty acres, in square form, to each settler, at the price of one dollar and twenty-five cents

per acre; payment to be made in cash within one year from date of settlement, or of the passage of this act." (16 U. S. Stat. at Large, 362.)

Under this statute no one but an "actual settler" could purchase any of said land, and he could not purchase more than 160 acres. The government evidently intended not only that no one but actual settlers should get any portion of said Osage Diminished Reserve, but also that every quarter-section of such reserve should be occupied by an actual settler. There is no pretense that the plaintiff was ever an actual settler at. all on the land in controversy. Therefore he had no right himself to purchase said land from the government. And to procure any other person to purchase it for him, would be a fraud upon the government. If he could obtain title to lands in that way it would be to cause the government to sell its lands to others than actual settlers in violation of its own. laws. In this way an individual might procure thousands of acres of lands, instead of only 160 acres as the law provides, and might procure the same without being an actual settler upon any portion of such lands, or even a resident of Kansas. Would not this be a fraud upon the government? Of course, where two *settlers* on a piece of government land are contesting as to which has the better right to enter the same, they may make a valid contract (by way of compromise) for one of them to enter the whole of it and then to convey a portion thereof to the other. (*Foster v. Brost*, 11 Kas. 350; *Snow v. Flannery*, 10 Iowa, 318.) Such would not constitute any fraud as between themselves, nor as against the United States. Perhaps also other valid contracts might be made with reference to government lands, but it is not necessary now to mention them. But a *parol* contract concerning the purchase and conveyance of *lands* belonging to the United States, made *in violation of the spirit of the laws* of the United States, and in *fraud* thereof cannot be *enforced* specifically or otherwise by a *court of equity;* and taking such contract together with all the

other facts of this case, no *trust estate* in said lands *resulted* therefrom in favor of the plaintiff which can be declared or enforced by a court of equity.

The judgment of the court below must therefore be reversed.

All the Justices concurring.