## E. J. JARVIS v. F. M. CAMPBELL.

OSAGE CEDED LANDS; *Invalid Promissory Note*. On March 2, 1874, while the title to a certain piece of land, of what was then called the "Osage ceded lands," was still in the United States, and before said land was sold by the United States, and while it was vacant and unoccupied, the plaintiff, through his brother, sold a claim thereto to the defendant, and in consideration therefor received the defendant's promissory note, executed to the plaintiff. *Held*, That the transaction was illegal and void, and that the note was given without any sufficient consideration.

*Error from Allen District Court.*

ACTION brought by *Jarvis* against *Campbell*, upon a promissory note, given March 2, 1874, by the defendant to the plaintiff, for a claim to a certain piece of land which was

a part of what was then called the "Osage ceded lands."
Trial at the June Term, 1878, of the district court, and
judgment for the defendant. The plaintiff brings the case
here. The facts sufficiently appear in the opinion.

*Cates & Keplinger,* for plaintiff in error.

*G. A. Amos,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action on a promissory note,
given by the defendant to the plaintiff. The note was dated
March 2, 1874, and was given for a claim to a certain piece
of land, which was a part of what was then called the "Osage
ceded lands." The plaintiff's brother had once resided on
the land, and had made some improvements thereon, but
at the time the note was given the land was vacant and
unoccupied. The railroad company ( but what railroad com-
pany is not shown) had a patent for the land, but it is ad-
mitted that the patent was illegal and void. The plaintiff,
however, did not pretend to found his claim, or the claim of
his brother, to the land upon any supposed right of the rail-
road company. The land really belonged to the United
States, but the United States, by a treaty with the Osage
Indians, had no right to do anything with the land, except
to sell it "on the most advantageous terms for cash," and to
apply the proceeds of the sale as provided by the treaty.
(14 U. S. Stat. at Large, pp. 687, 692, article 1, and amend-
ments.) The treaty also contained a provision, that "no
preëmption claim or homestead settlement shall be recog-
nized." (Id.) No person really had any right to take posses-
sion of said land, or to occupy it, without first purchasing it
from the United States.

The contract between the plaintiff and defendant was ille-
gal and void, and the note was given without any sufficient
consideration. After the defendant purchased the land, or
the claim thereto, from the plaintiff, he had no right to go
upon it, and if he had done so he would have been a tres-

passer. He therefore got nothing by his purchase, and his note was entirely without any valuable or legal consideration. We would refer to the following authorities: *Wood v. The M. K. & T. Rly. Co.*, 11 Kas. 323; *Stone v. Young*, 4 Kas. 17; *Vickroy v. Pratt*, 7 Kas. 238; *Brewster v. Madden*, 15 Kas. 249; *Brake v. Ballou*, 19 Kas. 397; *Lucas v. Sturr*, 21 Kas. 483.

The fact that the business was done by the plaintiff's brother, and not by the plaintiff himself, and that the plaintiff was ignorant at the time as to what the consideration of the note was, can make no difference; for a deposition of the brother was introduced in evidence, showing that he acted as the agent of the plaintiff, and what the agent knew, of course the principal is bound to know; and the plaintiff afterward accepted the note, which was originally executed to him, and thereby ratified what his agent did.

The judgment of the court below will be affirmed.

All the Justices concurring.