## JANE O'NEILL v. JAMES MARTIN.

PAROL CONTRACT RELATING TO LAND, *Specific Performance of.* O., prior to May 22, 1871, was in the actual possession of one hundred and sixty acres of school land, expecting to purchase the same. At said date he made an oral contract with M. to sell the latter nine and fifty-two hundredths acres of the land for a valuable consideration, and thereupon delivered possession of the premises to M., who made payment to him therefor, continued in possession thereof, and made lasting and valuable improvements thereon. At the time of said parol agreement, O. agreed to convey to M., by deed of general warranty, the land so sold to him, as soon as the former obtained the legal title to the land. On June 18, 1872, O. purchased the whole quarter-section from the state, and received a certificate therefor, paying one-tenth of the purchase price in cash. He died in January, 1879, but his administrator completed the payment, and the state issued the patent to the administrator of the intestate for

the benefit of the heirs. *Held*, The law will compel a specific perform-
ance of the parol agreement in favor of M. against the heirs of O.

*Error from Elk District Court.*

ACTION by plaintiff, to compel specific performance. The
plaintiff alleges:

"That the said defendant, Jane O'Neill, is the mother and
only heir of A. T. O'Neill, deceased; that said A. T. O'Neill
died intestate, on the 27th day of January, 1879; that in the
lifetime of said A. T. O'Neill, and on or about the 22d day
of May, 1871, said A. T. O'Neill entered into an agreement
with the plaintiff, whereby he agreed to sell, and did sell, to
the said plaintiff, the following tract of land, lying and situate
in the county of Elk, and state of Kansas, described and
bounded as follows, to wit: Commencing at the northwest cor-
ner of the northeast quarter of the northwest quarter of section
number sixteen, township number thirty-one, south, of range
number ten, east; thence running east 1,342 links, thence south
710 links, thence west 1,342 links to the 80-acre line, thence
north to the place of beginning, containing nine and $\frac{52}{100}$ acres
of land; and to convey the said lands to the said plaintiff by
deed of general warranty, on the payment of $57$\frac{12}{100}$, and at
the time when said A. T. O'Neill should purchase said land,
the lands at that time being school lands. That said A. T.
O'Neill, under said contract of sale, delivered to said plain-
tiff the possession of said premises; that said plaintiff has been
in possession of said lands ever since, has paid the full purchase
price therefor to the said A. T. O'Neill, and made lasting and
valuable improvements thereon, consisting of fencing, setting
hedge, building corrals, and otherwise improving the lands to
the value of $200. and more. And the said plaintiff avers
that he has always paid the taxes and assessments of every
nature on said premises. And said plaintiff avers that on the
18th day of June, 1872, said A. T. O'Neill purchased said
lands from the state of Kansas; that on the first day of March,
1880, the governor of the said state of Kansas issued his pat-
ent to said lands to one John F. O'Neill, administrator of the
estate of said A. T. O'Neill, deceased, for the benefit of the
heirs of said A. T. O'Neill; that neither said lands, nor any
part thereof, have passed to the administrator of said estate,
as assets belonging to said estate, but descended to said de-
fendant, as the sole heir of said A. T. O'Neill; that said

O'Neill did not in his lifetime execute a deed of conveyance to said Martin, nor has his administrator, nor his heirs, executed to said James Martin, since the decease of A. T. O'Neill, a good and sufficient deed of conveyance, or any deed of conveyance whatever, conveying said land, or any part thereof, to said plaintiff, or any person for him, but have refused, and still refuse, to execute said deed."

The case was submitted at the April Term, 1881, to the court without the intervention of a jury, by consent of the parties. The court made the following findings:

"That all the allegations in said plaintiff's petition are true, as he hath therein alleged; and the court doth further find that the said defendant, Jane O'Neill, is the only heir-at-law of A. T. O'Neill, deceased; that said A. T. O'Neill died intestate, on the 27th day of January, 1879; that said A. T. O'Neill died seized of title in fee simple to the real estate mentioned in plaintiff's petition, and hereinafter described; that said A. T. O'Neill in his lifetime entered into an agreement with the said plaintiff, James Martin, whereby he agreed to sell, and did sell to said James Martin the lands described in plaintiff's petition, and described and bounded as follows, to wit: Commencing at the northwest corner of the northeast quarter of the northwest quarter of section number sixteen, in township number thirty-one, south, of range number ten, east, in Elk county, in the state of Kansas; thence running east 1,342 links, thence south 710 links, thence west 1,342 links to the eighty-acre line, thence north to the place of beginning, containing nine and $\frac{52}{100}$ acres of land; that said plaintiff, immediately after purchasing said land, entered into and took immediate possession thereof; and that said plaintiff has paid full purchase price therefor, and has paid all of the taxes on said land from the time of said purchase; and that said plaintiff has made valuable and lasting improvements on said premises; that said lands have never passed into or under the control of the administrator of the estate of said A. T. O'Neill, deceased, but descended direct to said defendant, Jane O'Neill, and that said James Martin is entitled in equity to specific performance of said contract."

Judgment was rendered for the plaintiff, and defendant brings the case here.

*R. H. Nichols,* for plaintiff in error.

*Daniel Carr,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: Three questions are presented for our determination by the counsel, on the part of the plaintiff in error: First, it is contended that it was not possible for A. T. O'Neill, the intestate, in his lifetime to make any valid agreement, by parol or otherwise, for the sale of the land in controversy; second, that in no event does the testimony sustain the judgment rendered; third, that the evidence of the plaintiff below ought to have been excluded. Upon the first point presented, the argument is not very clear, but we suppose that it is based upon the theory that as the lands on May 22, 1871, the date of the alleged contract between O'Neill and Martin, were school lands, O'Neill had no interest therein, and could not make any sale or other disposition of them. It appears from the record that at this time the latter was in actual possession of the premises, expecting to purchase the same, and that on June 18, 1872, he did purchase the land under the provisions of the act providing for the sale of school lands, then in force. He procured his certificate of purchase, and paid one-tenth of the purchase price thereof. Afterward, other payments were made, and on the 1st day of March, 1880, the administrator of the intestate made the final payment, and procured the patent therefor.

The law in force relating to the sale of school lands at the time O'Neill purchased of the state provided:

"Any person who has settled upon and improved any portion of school land prior to the first day of January, 1871, and prior to the United States survey of the Osage diminished reserve, may, within sixty days from its appraisement, file in the probate court of his county a petition stating that he has settled upon and improved said land; that the same has been appraised, and the amount of the appraisement, and asking that he be allowed to purchase the same: *Provided,* That the heirs of deceased persons who have made improvements upon said lands shall be entitled to all the rights accruing to actual residents thereon." (Laws of 1871, ch. 140, § 1.)

"That said court shall require the petitioner to prove the facts set forth in his petition, and the superintendent of public

instruction may appear and introduce testimony to controvert said facts; and if said petitioner fails to establish the truth of his petition, he shall be adjudged to pay the costs." (Gen. Stat. 1868, ch. 94, § 5.)

"In all cases where the court shall find that the petitioner has settled upon and improved school lands, as set forth in his petition, the petitioner may purchase the said lands, not exceeding one quarter-section, at the appraised value thereof, exclusive of the value of the improvements. The county treasurer shall then offer the unsold portion of all school lands for sale at public auction, after giving four weeks' notice thereof in some newspaper published in the county where the land lies." (Gen. Stat. 1868, ch. 94, § 6.)

From these provisions of the statute, it is apparent that the principal reason for permitting a settler upon school lands to purchase at the appraised value, exclusive of the value of the improvements, was to favor those persons who had actually occupied and improved the land prior to the dates therein named. Under the circumstances of the settlement and improvement of the land in controversy by Martin, after his parol contract with O'Neill, we do not think it any defense against the performance of such contract that the lands were school lands at the date of the contract. We do not perceive how the heir of O'Neill is in a situation to raise the question of any irregularity or fraud in the application of A. T. O'Neill to purchase the school land at its appraised value. In any event, as the state waived the irregularity or fraud of the petitioner and gave a patent for the land, if O'Neill were living he could not complain, neither can his heir holding under him make complaint. Even if the contract between Martin and O'Neill be deemed a technical violation of the statute relating to the sale of school lands, the requirements of settlement, occupancy and improvement were complied with, because the land was settled upon, occupied and improved at the time of the filing of the petition, although a part of such occupancy, settlement and improvement was done by Martin instead of the petitioner. This case is easily distinguished from *Brake v. Ballou,* 19 Kas. 397, because there was an attempt to enforce a contract to obtain lands for an-

other than an actual setler, in palpable violation of the law of the United States and to defeat the main purpose of the law.   As O'Neill, after his contract with the state for the land in controversy, retained the purchase-money paid by Martin, permitted the latter to continue in possession thereof, and make lasting and valuable improvements thereon, neither O'Neill, nor his heir, after the issuance of the patent by the state, can be permitted to plead any irregularity or fraud in obtaining title as a bar to the suit of Martin. (*Fackler v. Ford,* 1 McCahon, 21; *Fackler v. Ford,* 24 How. 323.)  At the time that O'Neill ought to have complied with his contract by executing a deed, title had been acquired by him, and if he had then made a conveyance, of course it would have transferred the legal estate to Martin.   If O'Neill were still living, the court would compel specific performance of his parol contract, —his heir stands in his shoes.   In equity, the land belongs to Martin.   The heir has the legal title.   The court properly directed specific performance to confer upon Martin such legal title.   In this case, the agreement for the purchase of the land was in parol accompanied by part performance, by taking and holding possession of the land, in pursuance of the agreement, and making valuable improvements thereon; and while the statute does not authorize an action to be brought on such a contract, yet the court interferes in behalf of such a purchaser, not on the ground of the breach of the verbal contract, but because of the acts done under it on the faith of its terms, which it would be bad faith in the vendor not to carry out by executing the conveyance.   The state does not intervene or complain of the action of either of the parties; and as between the parties to the original contract, a court of equity would not sanction the resisting of the completion of the agreement on the part of O'Neill, after the part performance by Martin.

After the foregoing intimations as to the correctness of the judgment, it is unnecessary to comment upon the second objection, as it is apparent from what we have already stated, that we believe the testimony sustains the judgment; at least

that there was sufficient testimony offered to prevent us from overturning the findings of the trial court.

There was no error in admitting the evidence of the plaintiff below. Section 322 of the code forbids a party to testify in his own behalf in respect to any transaction or communication had personally by such party with a deceased person, when the adverse party is the heir-at-law, and has acquired title to the cause of action immediately from such deceased person, but does not prevent the party from being a witness as to other facts in his own behalf. The witness was not permitted to give testimony as to any transaction or communication had personally with A. T. O'Neill, and the ruling of the court was not violative of said section. (*McKean v. Massey,* 9 Kas. 600.)

The judgment of the district court will be affirmed.

All the Justices concurring.