The opinion of the court was delivered by
VALENTiNE, J.:
The sole question involved in this case is one with reference to the proper construction and interpretation of the occupying-claimant law. (Comp. Laws of 1879, ch. 80, art. 25, §§ 601 — 613.) This question grows out of a controversy concerning the title and ownership of the north half of the northwest quarter of section five, township thirty-two, south, of range seven, east, in Cowley county, Kansas, *596 which controversy has been pending in the courts for nearly ten years, and in which this court has already rendered two decisions. (Brake v. Ballou, 19 Kas. 397; Stephens v. Ballou, 25 Kas. 618.) By virtue of these two decisions it is now settled that the plaintiffs, Buck & Kellogg, are the owners of the land in controversy, and that Ballou is entitled to the benefit of the occupying-claimánt law — Brake, the original patentee, having conveyed the land to the plaintiffs, Buck & Kellogg.
After the second decision was made by this court, the parties stipulated in the district court that the sheriff and clerk of the district court should immediately draw and summon a jury, as provided by §§ 603 and 605 of the oecupying-claimant law, to assess the value of the land, the value of the improvements, the value of the rents and profits, and the damages to the land, as provided by § 604 of the occupying-claimant law. The jury were drawn, impanneled, and sworn, and they assessed the value of the land, the improvements, etc., as follows: The value of the land, without improvements, $600; the value of the improvements alone, $1,032.75; the value of the rents and profits of the land from August 20, 1879, up to October 31,1881, $1; the damages to the land by waste, $20; and the net value of the improvements, after deducting the rents, profits and waste, $1,011.75..
The plaintiffs are not very well satisfied with the income awarded to them by the jury as the value of the rents and profits of their land, the same being only at the rate of 47 cents per year; and they are very much dissatisfied with the amount assessed by the jury as the value of the improvements made by the defendant. Their counsel say in their brief that the value of the improvements was assessed at an amount which is nearly double the actual value of the land and the improvements taken together. The plaintiffs, however, were satisfied with the valuation of their land as fixed by the jury, and the defendant was satisfied with the assessed value of his improvements; and therefore, with the adverse views which the parties respectively entertained and which *597 they still entertain, concerning the proper construction and interpretation to be given to the occupying-claimant law, both parties concluded to let the assessments and valuations, as fixed by the jury, stand, and neither party made any objection thereto.
Afterward, and on November 23, 1881, the assessments and valuations as fixed by the jury were approved by the district court, and thereupon the plaintiffs tendered their warranty deed conveying the-land to the defendant, and elected to take the value of the land, and requested the court to fix a time within which the defendant should make payment of such valuation, under § 610 of the occupying-claimant law. This the court refused, and on November 28, 1881, made an order refusing “to permit the said plaintiffs to elect to take the value of the said land as assessed and valued, by the said jury, and to fix the time within which said defendant shall pay said valuation.” And the court then rendered a judgment “that the defendant, George W. Ballou, do have and recover of the plaintiffs, Samuel A. Stephens, J. Jay Buck and L. B.^Kellogg, the sum of $1,011.75; and it is ordered by the court that no writ or process shall issue herein for the eviction of said [defendant, George W. Ballou, from the ‘land in controversy’ until this judgment shall be paid by the said plaintiffs.” To this order and judgment of the court below the plaintiffs duly excepted, and they now bring the case to this court for review.
The plaintiffs in this court insist that there were two serious errors committed by the court below: First, in denying the plaintiffs their election to take the assessed value of the land, instead of the land itself; and second, in rendering a money judgment against the plaintiffs for the net assessed value of the improvements. Whether the court below erred or not, in these respects, depends entirely upon the construction that may be given to §§ 601, 604, 608, 609, 610 and 611 of the occupying-claimant law. These sections are as follows:
Section 601, so far as it is necessary to quote it, provides that the occupying claimant —
*598 “ Shall not be evicted or thrown out of possession by any person or persons who shall set up and provean adverse and better title to said lands, until said occupying claimant, his, her or their heirs, shall be paid the full value of all lasting and valuable improvements made on said lands by such occupying claimant, or by the person or persons under whom he, she or they may hold the same, previous to receiving actual notice by the commencement of suit on such adverse claim by which eviction may be effected.”
Section 604, so far as it is necessary to quote from it, provides that the jury drawn under the provision of such section, shall not only assess the value of the improvements, and of the rents and profits and damages, but “shall also assess the value of the land in question, at the time of rendering judgment as aforesaid, without the improvements made thereon.”
And sections 608 to 611 read as follows:
“Sec. 608. That if the jurors impanneled under the provisions of such act shall report a sum under the provisions of the same in favor of the occupying claimant or claimants, or the assessment of the valuation of the valuable and lasting improvements, deducting the damages to said land, as is provided in said act, the court shall render judgment in favor of the said occupying claimant or claimants for the sum or sums so assessed by the said jurors as aforesaid; and no writ or process for the eviction of the said claimant or claimants shall be issued until the said judgment shall be paid.
“Sec. 609. If the successful claimant, his heirs, or the guardian of such heirs, they being minors, shall elect to pay, and do pay, to the occupying claimant, the sum so reported in his favor by the jurors, within such reasonable time as the court may have allowed for the payment thereof, then a writ of possession shall issue in favor of said successful claimant, his heirs, or the guardian of such heirs.
“Sec. 610. If the successful claimant, his heirs, or the guardians of said heirs, they being minors, shall elect to receive the value without improvements so as aforesaid assessed, to be paid by the occupying claimant within such reasonable time as the court may allow, and shall tender a general warranty deed of the land in question, conveying such adverse or better title within said time allowed by the court for the payment of the money in this section mentioned, and the occupying claimant shall refuse or neglect to pay said money *599 (the value of the land without the improvements) to the successful claimant, his heirs or their, guardians, within the time limited as aforesaid, then a writ of possession shall be issued in favor of said successful' claimant, his heirs or their .guardians.
“Sec. 611. The occupying claimant or his heirs shall in no case be evicted from the possession of such land, unless, as is provided in the two preceding sections, where an application is made for the value of improvements under this law; and in all cases where the occupying claimant or claimants, or his ■or their heirs, shall have paid into the court the value of the lands in question, without improvements, within the time allowed by the court, (when an election has been made by the successful claimant or claimants, his or their heirs or guardians as aforesaid, to surrender any tpact of land under the provisions of this act,) such occupant or his heirs may, at any time after such payment shall have been made, file his, her or their petition in the court where such judgment of eviction was obtained, and obtain a decree for the title of such land, if thé same has not been previously conveyed to such occupant aforesaid.”
The occupying-claimant law has been in force for a great many years in Kansas. In 1868 it was reenacted, and placed in the code of civil procedure; and the occupying-claimant law ,as then enacted still remains in -force, except that §§601 and 608 have been amended. These two sections were amended in 1873, and in amending them the following provisions {which we include within quotation marks.) which were contained in the original sections were nqt inserted in the sections as amended, to wit:
“Sec. 601. The occupying claimant shall not be evicted or turned out of possession until he has been paid for his improvements, ‘ unless such occupying claimant shall refuse to pay the person so setting up and-proving an adverse and better title, the value of the land without the improvements made thereon as aforesaid, upon the demand of the successful ■claimant, or his heirs, as hereinafter provided.’”
“Sec. 608. ‘The successful claimant or his heirs, they being minors, may at his or her or their election either demand of the occupying claimant the value of the land without improvements, so as aforesaid assessed, and tender a deed of the *600 land in question to the occupying claimant; or he, she or they may pay the occupying claimant the sum so allowed by the jurors in his favor, within such reasonable time as the court shall allow.’”
Sections 601 and 608, as they now stand, were passed in 1873, while the other sections of the o'ccupying-claimant law were passed in 1868; therefore'if any provision of either section 601 or 608 should be found to be irreconcilably in conflict with any provision contained in any one of the other sections of the occupying-claimant law, the provision contained in the later enactment would of course repeal, by implication, the conflicting provision found in the former enactment; but, as has often been said by this as well as other courts, “repeals by implication are never favored in law;” and this is preeminently true in Kansas, where the constitution of the state requires that “ no law shall be revive’d or amended unless the new act contain the entire act revived, or the section or sections amended.” (Const., art. 2, §16.)
There is no claim that §§ 604, 609, 610 and 611 of the occupying-claimant law have been absolutely and entirely repealed, and of course they are not so repealed; for if the legislature had intended to wholly and absolutely repeal them, it would have done so in express terms, and not have left the question the subject of great and inextricable doubt. The only claim is, that these sections have been impliedly amended and modified, by having the following provisions annulled and destroyed, to wit, those which relate to the valuation of the land in controversy, separate from the improvements thereon; those relating to the plaintiff’s right to elect to take the value of the land instead of the land itself; those relating to the occupying claimant’s liability to forfeit everything, after the plaintiff has elected to take the valuation of the land, if the occupying claimant should then neglect or refuse to pay to the plaintiff such value within some reasonable time, to be fixed by the court; and those relating to the plaintiff’s right to a writ of possession or of restitution and eviction without paying for the improvements, after the defendant has forfeited all right to compensation for his improvements.
*601 . „ , „ implication. In amending the occupying-claimant law, every section intended to be amended, by having some of its provisions stricken out or modified, or by having new provisions inserted, or by being amended in any. other manner, should (if the provisions of §16, article 2, of the constitution are followed) be reenacted completely, and the new act should contain every section complete which is thus amended. Now the act of 1873 does not contain §§604, 609, 610 or 611, or any portion thereof; and hence, in view of said provision of § 16, article 2, of the constitution, can we say that these sections, or any one of them, or any part thereof, has been amended, or in any respect modified or repealed? Can we say that their provisions are to be construed in any different manner from what they would be construed if the new act of 1873 had never been passed? In other words, can the legislature amend these sections or the sections of any statute in any other mode than that prescribed by the constitution?' It is only in'rare cases and reluctantly that we should hold that it can. But, as before intimated, we must hold, though cautiously, that statutes may in some cases be amended or modified or repealed even by implication, and without the new act containing the entire section or sections amended, or modified or repealed. But before we should hold that any section of the law has thus been amended or modified or repealed, we should be satisfied that such has-been so done, beyond all reasonable doubt. If the provisions of the old act and of the new can be reconciled by any possible mode of interpretation or construction, if the old act and the new can both be given force and effect, according to-their terms and under any circumstances, then it should never be held that one overturns and destroys the other, but both should be given full force and effect.
Counsel for plaintiffs say that some of the new provisions are unconstitutional and void, and cite as authority therefor the following cases: McCoy v. Grandy, 3 Ohio St. 463; Childs v. Shower, 18 Iowa, 261; Nelson v. Allen, 1 Yerg. (Tenn.) 361.
*602 2. void enactment. If counsel are correct in this; if in fact any of the provisions of §§ 601 and 608 are unconstitutional and void, then of course such unconstitutional provisions cannot have the force and effect to repeal, by implication or otherwise, any of the provisions of any former act. (In re Petty, 22 Kas. 489; State v. Hallock, 14 Nev. 202; Childs v. Shower, 18 Iowa, 262.) A void enactment can never have the force ancj effec(; f;0 repeal by implication any valid law which is supposed to be in conflict with the void enactment.
s occu m cÓnsTuea; ’ With these preliminary remarks we shall now proceed to consider the question whether any of the provisions of §§ 601 and 608 are irreconcilably in conflict with any of the provisions of §§ 604, 609, 610 and 611, of the occupying-elaimant law, and whether the first-mentioned sections impliedly repeal the latter. We think there is a conflict in one or two particulars, and in one or two particulars only. We think that § 610 of the occupying-claimant law has been so modifie<l that the occupying-claimant never forfeits his right to his improvements, or else to compensation thereior, and that no writ oi possession or of restitution or eviction can ever be issued in favor of the successful claimant, or those holding under him, to dispossess the occupying claimant, until the occupying claimant has been paid the assessed value of his improvements. But we do not think that the owner’s right to elect to take the value of the land, instead of the land itself, ha's been overturned or destroyed by the subsequent act of 1873; but such right still remains in force, unchanged and unimpaired.
Section 604 of the occupying-claimant law provides for assessing the value of the land itself without the improvements. This provision, of course, can have force and effect only upon condition that the plaintiff still has his right of election to take the value of the land, instead of the land itself; while §§ 609, 610 and 611 expressly recognize the plaintiff’s right to make such election, and indeed, § 610 expressly authorizes the same. This construction and interpretation of the several sections of the occupying-claimant law, we think, *603 gives force and effect to all the sections of the law; and we think that no other construction would give force and effect to the entire law. With this interpretation of the law, when-a plaintiff in an ejectment action obtains a judgment for th.e recovery of the land, and the occupying claimant obtains a judgment that he is entitled to compensation for his improvements, then the plaintiff may elect which he will take — the land, or the value of the land. If he takes the land, he must pay the defendant for his improvements, and then he becomes entitled to the possession of the land, and a writ to evict the defendant, if the defendant does not voluntarily give him the possession without such writ. If, however, the plaintiff elects to take the value of the land, and tenders a deed to the defendant, then the land in law and equity becomes the property of the defendant, and all that the plaintiff is then entitled to is the value of the land without the improvements. In just what way he may recover that value, the statute, as it now stands, does not prescribe. Under the statute before it was amended in 1873, if the defendant did not pay the value of the land to the* plaintiff within a reasonable time — to be fixed by the court — the plaintiff might then have his writ of eviction to obtain possession of the land; but under the law as it now stands, he is not entitled to any such writ. Under the law as it now stands, the plaintiff would probably be entitled to commence an independent action to subject the land, with the improvements, to the payment of his claim, and to sell the land, with the improvements, for that purpose; for undoubtedly his claim is a lien, and a prior lien, upon the land. It is possible, however, that the plaintiff may also have some other remedy. It is not necessary, however, in this case to determine what the plaintiffs’ remedy, or their best remedy, is; for as the plaintiffs are represented by able counsel, their counsel will undoubtedly soon find a remedy after we have determined what their rights are. If it should be asked why the owner of the land, instead of the occupying claimant, should have the right of election, it may be answered that the owner did not make the improvements, nor request *604 that they should be made, nor has he ever used them; and it cannot be said that he wants them. While the occupying claimant took possession of the land, claiming to own it, claiming to want it, and himself made the improvements thereon. If he did not want the land and the improvements, then his improvements were not made in good faith; and if not made in good faith, then he should not recover either the improvements or the value thereof. ■ It is, therefore, not unfair to him to give to him the land which his acts show that he very much desires, -together with his improvements, for the mere actual value of the land itself without the improvements ; but it would be wrong to force the plaintiff to take the improvements which he probably never wanted, and to force him against his will to pay the full value thereof. Therefore, in both law and equity, the owner of the land should have the right of election, in preference to the occupying claimant.
Under the authorities above cited from Ohio, Iowa and Tennessee, the law would be unconstitutional if it gave the right of election to the occupying claimant. Besides, as we construe the law, it is now very favorable «to the occupying claimant. No writ of eviction can ever be issued against him, unless he is first paid the full value of all the improvements^made by him. And if the owner chooses to let him retain the land, he then gets the land with all his improvements by simply paying for the value of the land, without the improvements.
We have construed the law as it now stands upon our statute book. Those portions of the law that were stricken out in 1873, do not now have any force or effect, and are valuable only as indications of what the legislature intended when it struck them out. Looking at those portions which the legislature struck out in 1873, we think there are at least, three reasons for so striking them out; first, it was intended by the legislature to so amend the law that the occupying claimant should never forfeit his right to compensation for his improvements; second, it was further intended by the legislature' that no writ of eviction should be issued, to evict *605 the occupying claimant from the premises, until after he had been paid a full compensation for his improvements; third, for the purposes of giving the plaintiff an election to take the land with the improvéments, aud_ to pay for the improvements, or to take merely the value of the land, it was not necessary that those portions of §§ 601 and 608 of the occupying-claimant law which were stricken out should be retained, because ample provisions for such election were contained in §§ 609, 610 and 611 of the oecupying-claimant law, which were not repealed; and therefore the portions stricken out were useless for the purpose of giving the plaintiff such election.
We think that that portion of the judgment of the court below which refused to permit .the plaintiffs to elect to take the value of the land instead of the land itself, and to fix a time within which the defendant should pay such valuation, was and is erroneous. The other portion of the judgment we hardly think is erroneous, for as we construe it, it simply intended to prevent any writ of eviction from issuing to evict the defendant from the premises, until the defendant has been paid full compensation for his improvements. It was not intended to be, and we do not think that, it is, any such judgment as can be enforced personally against the plaintiffs. If it were such a judgment, of course it would be erroneous; but we do not think that it is such a judgment.
That portion of the judgment of the court below which refused to permit the plaintiffs to elect to take the value of the land without the improvements, and to fix a time within which the defendant should pay such valuation, will be reversed, and the cause remanded for further proceedings, in accordance with this opinion.
All the Justices concurring.