No. 28,694.

The Atchison, Topeka & Santa Fe Railway Company, *Plaintiff*, v. The Board of County Commissioners of the County of Leavenworth, John L. Prehn, as County Treasurer of Leavenworth County, and J. E. Voorhees, as County Clerk, etc., *Defendants*.

(274 Pac. 266.)

Opinion filed February 9, 1929.

*William R. Smith, Owen J. Wood, Alfred A. Scott* and *Alfred G. Armstrong,* all of Topeka, for the plaintiff.

*Jesse A. Hall,* county attorney, and *James B. Kelsey,* assistant county attorney, for the defendants.

The opinion of the court was delivered by

DAWSON J.: This is a proceeding in mandamus to compel the board of county commissioners of Leavenworth county to comply with an order of the public service commission which directed the county board to issue to plaintiff a tax-refunding warrant for $339.36, on the assumption that such sum was the amount in excess of the maximum which under a lawful levy could have been collected on plaintiff's property and which plaintiff had paid under protest in December, 1926, and June, 1927.

The particular tax under which the protested levy was made was for the support of the poor, and the merits of the action depend chiefly upon the proper construction of a statute enacted in 1911, and another in 1919. These appear in reverse order in the revision of 1923, thus:

"39-340. *Special county levies.* That for the purpose of raising revenue to carry out the provisions of this act, relating to the care, support and maintenance of the poor and providing comforts therefor, within and without the county home or asylum for the poor, and for the purpose of relieving the general revenue fund of such counties of such expenditures, the board of county commissioners of any county are hereby authorized and empowered and they may levy an annual tax of not exceeding five-tenths of one mill on the dollar, on all taxable property in their respective counties, in addition to other tax levies provided by law, for the purpose of paying such expenses necessarily incurred in providing for the support, care, and maintenance of the unfortunate inhabitants thereof, and all such expenditures for the care, support and·maintenance of the poor within and without the county home or asylum for the poor shall be paid from the funds so raised by said tax levy. (L. 1919, ch. 160, § 1; June 17.)"

"39-342. *Additional levies.* The county commissioners of all counties in the state of Kansas having a population of not less than 39,000 nor more than 45,000, and in which counties there is located a city of the first class having a population of not less than 19,000 nor more than 25,000, are hereby authorized to levy upon all taxable property in their respective counties each year at the time for levying taxes for other purposes, a tax of one-half mill on the dollar, in addition to all other levies now authorized by law, for the support of the poor of the county and for such purpose only. (L. 1911, ch. 323, § 1; March 18.)"

On the assumption that both these statutes are in force in Leavenworth county the county board levied seven-tenths of a mill as a "poor fund levy." Plaintiff's contentions are that the act of 1919

(R. S. 39-340) repealed the act of 1911; but if not, the latter act furnished the exclusive authority for levying a tax for the support of the poor in Leavenworth county, and that both statutes are not in force in that county.

Plaintiff's demand for a refund of the alleged excess being rejected, it brought a proceeding before the tax division of the public service commission (R. S. 79-1702), which held that the plaintiff's construction of the pertinent statutes was correct, and made an order directing the county board to refund the excess as claimed.

Part of that order reads:

"The commission finds from the evidence before it in connection with this application that Leavenworth county, in 1926, levied 0.7 of a mill for the benefit of the county poor fund. The applicant sets out the fact that R. S. 39-340 provides for a maximum county poor fund levy of 0.5 of a mill, and, therefore, contends that the levy made is excessive and erroneous by 0.2 of a mill, which applied to the company's assessed valuation in said county, for the year 1926, of $1,696,740, produces $339.35, with which the applicant holds it was erroneously charged. In defense of the levy of 0.7 of a mill the county authorities cite sections 39-340 and 39-342, each section providing for a county poor fund levy of 0.5 of a mill. The commission, having carefully considered the matter, makes the following findings:

"Prior to 1911 the county poor fund was a part of and payable out of the county general fund; but by chapter 323, of the Laws of 1911, now section 39-342, R. S. 1923, certain counties were permitted to levy 0.5 of a mill for the poor fund in addition to the limit authorized for the county general levy. Later it appears that the legislature decided that all counties should be permitted to levy 0.5 of a mill for the poor fund in addition to the maximum levy for the county general fund, and enacted chapter 160, of the Laws of 1919, now section 39-340, R. S. 1923. It would not appear, however, that this later law would apply to the certain counties having authority to make a poor fund levy under section 39-342. While it is clear that for 1919 and thereafter it was the intention of the legislature that any county should levy 0.5 of a mill for the poor fund in addition to the general fund, giving to all other counties the same privilege which theretofore had been allowed only certain counties, the commission is of the opinion that it was not intended that certain counties should be permitted to make a levy under both laws. The commission finds, therefore, that the contention of the applicant that Leavenworth county, in 1926, erroneously levied 0.2 of a mill for the benefit of the county poor fund is correct; and that the refund of $339.35 should be granted."

The county board, persisting in its own interpretation of the statutes, declined to comply with the order of the commission; and an issue of law is now joined for our determination by defendants' motion to quash the alternative writ of mandamus issued on plaintiff's application.

It may help to solve the immediate question thus presented by taking note of the pertinent statutes governing tax levies for the support of the poor at the time the statute of 1911 was enacted.

Sections 5541 and 5572 of the General Statutes of 1909 (R. S. 39-306, 39-334) authorized the county board to raise money for the support of the poor by taxation. This fund might be provided for in the general levy for current expenses (*Comm'rs of Osborne Co. v. Blake*, 25 Kan. 356) or by a separate levy (G. S. 1909, § 5572; *Fields v. Russell, Sheriff*, 38 Kan. 720, 722, 17 Pac. 476), the limitation upon which was simply the general provision for holding down the aggregate tax levies for all purposes (G. S. 1909, § 9394 *et seq.; Comm'rs of Osborne Co. v. Blake*, supra).

The taxing power conferred by the act of 1911 was in addition to all other levies which could lawfully be made in 1911. It will not do to say that the act of 1911 conferred taxing power in addition to any other statutes which might thereafter be enacted— and particularly the act of 1919. The court is inclined to the view that by the act of 1919 the legislature recognized that the burden of supporting the poor was getting to be a problem in various parts of the state, and that it should confer upon all counties the same power to make a half-mill levy for the support of the poor that it had already conferred on Leavenworth county by the act of 1911; but the court holds that the preservation of both acts in the general revision of the statutes in 1923 does not indicate a legislative intention that Leavenworth county may levy taxes for the support of the poor under both statutes.

It follows that defendants' position is untenable; their motion to quash is denied; and plaintiff is entitled to judgment. The writ is allowed.

DAWSON, J. (dissenting): It will be noted that the statute of 1911 (R. S. 39-342) quoted above declares that in the counties to which it refers (which probably included none but Leavenworth county) a half-mill levy was authorized for the support of the poor, "in addition to all other levies now authorized by law." There was good ground for such legislation aside from the presumption of good faith and worthy purposes which must be ascribed to all legislative acts. In Leavenworth county the problem of caring for the poor is unusual. While the county itself ranks high in material wealth and its people in general are as enterprising and prosperous as other Kansas folk, there are located within its borders the state

penitentiary, the federal prison and the United States disciplinary barracks. Several thousand persons are incarcerated therein. It is but natural that the families of many of these persons should come from distant parts and settle down near their misfortunate relatives housed behind prison walls. Many such families are very poor, for the reason that their bread winners are in penal servitude without wage-earning capacity. This is a chronic condition, not a mere theory. In the enactment of the statute of 1911 the legislature took note of it. This court should take judicial cognizance of it. If we were in doubt about it, this being an original action where we are privileged to collate and weigh facts like other trial courts, we should not hesitate to order them formally inquired into and submitted for judicial consideration.

In *Young v. Regents of State University*, 87 Kan. 239, 124 Pac. 150, it was said:

"It is the duty of the court to interpret a statute designed to ameliorate social conditions and promote the general welfare of the people of the state in such a way that it may be upheld and not nullified, if it be possible to do so, and in such a way that the intention of the legislature may be carried out to the fullest extent. . . ." (Syl. ¶ 2.)

I deem it clear that it was the manifest legislative purpose to authorize the county of Leavenworth to levy half a mill for the support of the poor in addition to the general statutory authority conferred on county boards throughout the state. Therefore, after the enactment of the statute of 1911, Leavenworth county had all the general taxing powers conferred on counties for the support of the poor *and*, also, the special taxing-power in addition thereto conferred by that act of 1911.

In 1919 the legislature determined that the general revenue fund of the several counties should be relieved of the expense for the support of the poor and to that end it authorized a half-mill levy for such purpose, which should be in addition to all other tax levies, and that thenceforth the support of the poor should be paid from the funds raised by this particular tax levy. The act of 1919 (R. S. 39-340) now constitutes the general statutory authority for raising money for the support of the poor, and it supersedes whatever general statutory authority to that effect had existed prior thereto. It superseded the general statutory authority for levying taxes for the support of the poor which was in vogue at the time the act of 1911 was enacted to relieve the situation in Leavenworth county.

But the act of 1919 merely changed that general statutory authority. It did not avowedly affect the special act of 1911. Until the enactment of the statute of 1919 Leavenworth county could raise funds for the support of the poor under the general law and under the act of 1911 as well. It can still do so. Only the general law itself has been changed. The powers of the Leavenworth county board to levy taxes for the support of the poor are whatever the general statute ·may prescribe for that purpose plus that conferred by the act of 1911.

In *Stephens v. Ballou,* 27 Kan. 594, 601, this court said:

"If the provisions of the old act and of the new can be˙reconciled by any possible mode of interpretation or construction, if the old act and the new can both be given force and effect, according to their terms and under any circumstances, then it should never be held that one overturns and destroys the other, but both should be given full force and effect."

See, also, *State, ex rel., v. Atherton,* ante, p. 449, and cases cited therein.

For these reasons I dissent.

Mr. Justice HARVEY and Mr. Justice HOPKINS join in this dissent.